# Richmond.

## RAINES v. WALKER.

### February 1st, 1883.

1. DEEDS—*Date—Delivery.*—A deed will be presumed to have been delivered on, and will take effect from its date, but the presumption will yield to evidence to the contrary.

2. IDEM.—*Certified acknowledgment* is not inconsistent with prior delivery, and is not sufficient to overcome the presumption.

3. IDEM.—*General warranty.*—If one conveys land with general warranty, which at the time he does not own, but afterwards acquires the same, such acquisition enures to the benefit of the grantee.

4. IDEM.—*Unrecorded.*—A deed not acknowledged or not certified according to law, though actually admitted to record, cannot be read in evidence as a recorded deed, but as between the parties it is valid.

5. CASE AT BAR.—J. B. buys of N. W., and partly pays for land in 1859, but receives no conveyance. By deed of January, 1860, he conveys it to A. B., in trust for himself and wife and to survivor during their lives, remainder to their child. This deed was not certified according to law, though put on record, and A. B. had actual notice of it and held possession under it. N. W. conveyed the land to J. B. by deed of April, 1861, retaining lien for balance of purchase money. By deed dated November, 1862, but not signed until August, 1863, J. B. conveyed absolutely to A. B. one-half of said land, in consideration of his paying the said balance. J. B. and wife having died, leaving one child, D. F., wife of W. F., and A. B. having also died, and his executor rented the land to R., N. W., by his second deed dated July, 1879, conveyed same land to D. F., who with her husband, conveyed it to J. M. W., by whom ejectment was brought against R. to recover it.

HELD:

    1. The deed of August, 1863, was ineffectual to convey to A. B. more than J. B.'s life estate in the land, because latter had previously conveyed said land to A. B. as trustee, by the unrecorded trust deed of January, 1860, whereof A. B. had actual notice.

2. As against A. B. and his representatives the title of D. F. was good under the unrecorded trust deed though the second conveyance of N. W. was inoperative, and her deed to J. M. W. gave him complete title.

Error to judgment of the corporation court of the town of Danville, rendered May 3d, 1880, in the action of ejectment instituted by James M. Walker, plaintiff, against J. P. Raines, defendant, for the recovery of a certain lot of land in said town. The judgment having been adverse to the defendant, he procured from one of the judges of this court a writ of error and *supersedeas.* The opinion states the facts.

*Guy & Gilliam,* and *Cabell & Peatross,* for the appellant.

*Withers & Barksdale,* and *W. W. Henry,* for the appellee.

LACY, J., delivered the opinion of the court.

John Baugh, a citizen of Danville, conveyed by deed dated January 7th, 1860, a lot in the town of Danville to one Arthur Baugh, his father, in trust for the benefit of his wife and himself, for their joint lives, and to the survivor, remainder to their children. This deed was delivered to the clerk of the corporation court to be recorded, and was actually spread upon the record books, but it appears to have been improperly recorded, not having been acknowledged, as required by law. At the date of this deed, John Baugh had not acquired the legal title to the lot. He acquired the title subsequently by deed April 3d, 1881.

After he had thus acquired the legal title, he undertook to convey one-half of this lot to his said father, Arthur Baugh, in absolute property, which, before that, and which before he had himself got in the legal title, he had conveyed to the same Arthur Baugh in trust, as hereinbefore stated.

This deed bears date November 5th, 1862. And in the absence of any proof to the contrary, it would be presumed to

have been delivered on the day of its date. See *Harman* v. *Oberdorfer*, 33 Grattan, page 497—opinion of Burks, Judge. *Harvey and others* v. *Alexander and others*, 1 Rand. 219–241— opinion of Cabell, Judge. " If a deed has a date, the law intends it to have been delivered at the date. When, therefore, a deed is proved by witnesses, who say nothing as to the time of its delivery, and is thereupon recorded, it stands recorded as a deed proved to have been delivered at its date." In this case the deed was not signed by witnesses, but acknowledged before an alderman of the town.

Judge Daniel delivering the opinion of the court in the case of *Rodgers* v. *McCluer's administrator and others*, 4th Grattan, 81–83, said we perceive no distinction in principle between the presumption of delivery, arising from the proof of witnesses and the acknowledgment before a justice.

A certified acknowledgment for this purpose is by no means inconsistent with a prior delivery, and is not at all events sufficient to rebut the presumption arising from the date.

These cases establish the presumption of delivery arising from the date of the deed, and state the principle as broadly as it ever has been, or as it ever can be stated; and they embody the latest rulings of the court on the subject; and it may be observed to be a presumption of the law in the absence of proof, that the delivery follows the date of a deed, and a deed is presumed to take effect from its date in the absence of proof to the contrary; but this presumption could not hold in the face of proof to the contrary. If a deed should bear a date at one time, and be proved to be signed and delivered at a subsequent time, the deed would bind and take effect from the date of its delivery, so established.

This deed was dated November 5, 1862, and acknowledged before Alderman Sorey, August 22, 1863. Upon the rule just stated this deed is presumed to have been delivered November 5th, 1862—in the absence of proof. But in this case, this presumption seems to be rebutted by the testimony in the case.

The witness, Hunnicutt, proves that the deed was not actually signed until the day it was acknowledged—to-wit: August 22d, 1863, or he testifies to facts that strongly tend to prove it, and if such was the fact the deed could not take effect until August 22, 1863, as it was not signed until that day, and it was not a deed until it was signed, and the presumption of delivery, raised by the date, is thus rebutted.

This deed, then, of August 22, 1863, purports to convey one-half of this land to Arthur Baugh in absolute property. What was the force and effect of this deed? This is the main, and perhaps the only question, necessary to be considered.

On the 7th of January, 1860, the grantor in the deed for one-half of the property, of August 22, 1863, had conveyed the whole of the same property to the same grantee, *in trust*, for purposes therein set forth; and on April 3, 1861, a deed had been made to the grantor in the deed of August 22, 1863, which vested the legal title in the property in the grantee therein, the said John Baugh. If a person conveys land with general warranty, and does not own it at the time, but afterwards acquires the same land, such acquisition enures to the benefit of the grantee.

See opinion of Staples, Judge, in *Burtners* v. *Keran*, in 24th Gratt., page 42, and opinion of Carr, Judge, in *Doswell* v. *Buchanan*, in 3d Leigh, 394, and cases cited.

The deed of January 7, 1860, was not acknowledged and not certified according to law, though it was admitted to record, and could not be read in evidence as a recorded deed, but as between the parties thereto, it is valid, though not recorded. In delivering the opinion of the court in *Turner* v. *Stip*, 1 Wash. 319, marginal page, Judge Pendleton said: "The court below would, therefore, have done right in rejecting this as a recorded deed. But since the act of assembly, passed in the year 1748, such deeds, though not recorded, are valid between the parties, &c." And under the statute, section twelve, chapter 114, Code 1873, the deed of August 22, 1863, would have been effectual as to

one-half of this lot of ground, unless the grantee therein had actual notice of the deed of January 7th, 1860.

And it is important to consider the evidence concerning the connection of Arthur Baugh with the deed of January, 1860, in which he was grantee and trustee.

In the first place, the said grantee was the father of the grantor in the said deed, living in the same town, and the objects of the trust were meritorious.

The same attorney wrote the deed from John Baugh to Arthur Baugh, as trustee; and the deed from said grantor to the said grantee for one-half the same property.

Arthur Baugh seems to have taken possession of the property before the execution of the deed of August 22d, 1863, and to have held it continually until his death. In the year 1862, before the execution of the deed to him for one-half, he proclaimed to the witness again that in his dealing with this property he was acting under the sanction of a trust for his granddaughter, the only child of John Baugh, and that he felt under strong obligations therefore to do the best with the property. In September, 1860, he informed his tenant of this very property that he was acting as trustee for his grandchild, and felt obliged to rent out the property at public auction, to do the best for her, and to save himself harmless, in the view of future responsibility, and actually advertised the property at public auction, as trustee for this grandchild. He had occasion to bring suit for the possession of this property against his tenant in 1862, and the summons is by Austin Baugh, trustee for D. W. Baugh (the granddaughter). In addition, while Arthur Baugh made no delay to record the deed from his son, John Baugh, to him for one-half of the lot, he held possession of the deed from Wilson, conveying the legal title to said John Baugh in this lot, from April 3d, 1861, and withheld the same from record as long as he lived. Why did he withhold this deed for so many years? He must have had some motive. We have seen his expressions of devo-

tion to his granddaughter's interests, and his desire to save himself harmless at the same time. To put this deed to record may have appeared against interest, to him, as he, perhaps, knew that when it was put to record, if during his life, or his son's life, knowledge of and actual notice of the deed of January 7th, 1860, might, and would be proved, and thus the benefit of the deed of April 3d, 1861, would accrue solely to his granddaughter. And so this deed of April 3d, 1861, was withheld from record by him during his lifetime, and was by his executor, and son, W. A. Baugh, withheld from record after his death, until the 29th day of July, 1879, eighteen years after its execution, and when we come to look for the exciting cause which brought about this recordation at this late day, we see that on the twenty-third day of July, 1879, the same month, and just six days before, another deed had been put to record by the original grantor, Nathaniel Wilson, conveying this property to the beneficiary in the first deed of January 7th, 1860, the granddaughter, who had grown to womanhood and had married, and who came of full age July 23, 1879.

This deed of July 23d, 1879, from Nathaniel Wilson, was ineffectual to pass any estate, as the grantor had already parted with the legal title to John Baugh, but the deed of April 3d, 1861, having been now recorded, the grant therein accrued for the benefit of the beneficiaries under the deed of January 7th, 1860; and the deed of August 22d, 1863, was ineffectual to pass any estate to the grantee therein, the grantor in the same, having previously, with full notice to grantee therein, parted with his interest in said property. On the first day of August, 1879, a few days after the recordation of the last mentioned deed, D. W. Flynn, who was D. W. Baugh, and her husband, W. S. Flynn, made a deed to one James M. Walker, and Walker, finding the appellant in possession of the property, as the lessee of Arthur Baugh, sued said appellant in ejectment, and recovered the said property; the court having, by argument of all the

parties, tried the case, and judgment was given in favor of said Walker, the appellee. Upon the facts of this case, and for the reasons already stated, we are of opinion that there was no error in the said judgment of the said hustings court of Danville, and the same is affirmed.

JUDGMENT AFFIRMED.