𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

Hardy, Trustee, & als. *v.* Norfolk Manufacturing Co. & als.

April 9th, 1885.

1. Partnership—*Partnership property.*—Property bought for and appropriated to the purposes, and paid for with the funds of the partnership, is the property of the firm, though the legal title be held in the name of one of its members.

2. Idem—*Liabilities—Discharge.*—As one member of a partnership may create a liability on the firm, so one member may discharge the liability of the firm.

3. Joint-Stock Companies—*Stockholders.*—To the extent of his stock, each stockholder is liable individually for the debts of the corporation. Where stockholder pays the debt of the corporation and takes an assignment thereof to himself, he cannot revive that debt by assigning it to a third party.

4. Idem—*Idem—Lien on property of.*—Where real estate, whereon is a lien, is conveyed to a joint-stock company, and a stockholder pays off the lien and takes an assignment thereof, the lien is extinguished as to the creditors of the corporation, and cannot be revived by his assignment thereof to a third party.

5. Idem—*Idem—Idem—Estoppel.*—Where a vendor's lien exists on the real estate of the corporation, represented by a past due note, and the stockholders agree with the creditors of the corporation, that the latter shall give the corporation further time, the corporation will satisfy the vendor's lien, and convey its property free from liens, in trust to secure those creditors, and one of the stockholders shall satisfy that lien and take an assignment thereof to himself, he is estopped from claiming that lien as his own property, and an assignee from him *without* notice, if the note be *past due,* or an assignee from him *with* notice, if the note be *not* past due, stands in no better position than his assignor; and the trust deed lien of the creditors hath precedence.

6. Deeds—*Dates—Acknowledgment—Presumption.*—If a deed hath a date, the law presumes it to have been delivered at that date, and this though it was acknowledged for registry at a subsequent time. But this presumption of law must yield to proof to the contrary.

7. Trust-Deeds—*Omitted debts—Subsequent judgment.*— If a chartered company create a lien on its property for the purpose of giving preference to one or more creditors of the company over any other creditor, (except to secure a debt contracted at the time), such lien shall enure to the benefit ratably of all the creditors existing at the time of the creation of the lien. So, where a creditor under contract made before the creation of the lien, is omitted, and after that time obtains a judgment for unliquidated damages for breach of the contract, the lien enures for his benefit, ratably, with the other creditors. Code 1873, chapter 57, section 63.

Appeal from decree of hustings court of Portsmouth city, rendered 16th October, 1882, in suit of the Farmers and Merchants Loan and Trust Company and als. against H. C. Hardy and W. G. Elliott, trustees, the Norfolk Manufacturing Company and als. This case presents a contest over the property of the Norfolk Manufacturing Company, between deed of trust creditors, with debts aggregating over $40,000, and parties claiming a vendor's lien for $23,450. The property is a parcel of land in Atlantic city, adjacent to Norfolk city, improved with works and machinery of much value, which was conveyed, 18th November, 1872, by the Atlantic Iron Works and Dock Company to Marshall Parks, for $70,350; for $23,450 whereof a lien was reserved, represented by his note, which was actually the debt of the Norfolk Manufacturing Company, of which he was a stockholder and the general manager. By deed of same date Marshall Parks conveyed this property to the Norfolk Manufacturing Company, for the nominal consideration of $250,000, the minimum capital stock of the company, and reserved no lien. This company was in much monetary embarrassment. Two judgments had already been entered, and twenty-four suits were pending against it. Of the twenty-five hundred shares of its capital stock, paid in only by means of the con-

veyance of said property, twelve hundred and fifty were held by
W. L. Lance for himself, his son, De Haven Lance, and W. Z.
Hatcher, nine hundred and thirty-eight by M. Courtright, and
three hundred and twelve by Marshall Parks, who were the
corporators.

These stockholders, on 3rd December, 1872, proposed to pay
their creditors twenty-five per cent. of their debts in cash, and
to give them each two notes, payable in one and two years, and
secured by deed of trust on the company's property, cleared of
all prior liens.    This proposition the creditors accepted, entered
the judgments satisfied, and dismissed the suits.    In making
this agreement, W. G. Elliott represented the president of the
company, M. Courtright, who was not present.    M. Courtright
and W. L. Lance, the substantial men of the company, then
agreed to pay the twenty-five per cent. and the vendor's lien.
W. L. Lance arranged with M. Courtright for his half of the
sum needed.    The latter agreed to pay off the twenty-five per
cent. and the vendor's lien, and did so.    He satisfied the ven-
dor's lien to the Atlantic Iron Works and Dock Company, with
claims against it, which he purchased; but he took an assign-
ment to himself of the Marshall Parks note, which represented
the vendor's lien.    Later, he assigned that note, then past due,
to the Farmers and Merchants Loan and Trust Company, by
which parts thereof were assigned to the Bank of Portsmouth
and others.    He and his assignees then claimed that the said
vendor's lien was still unextinguished and belonged to said as-
signees.    The trustees differed in opinion.    H. C. Hardy con-
tended that the vendor's lien had been extinguished.    W. G.
Elliott insisted that that lien was still subsisting, and that it took
precedence over the lien of the creditors created by the trust
deed, which was executed by the company, and dated 1st Janu-
ary, 1873, pursuant to the said agreement of the stockholders
with the creditors, whereby the property of the Norfolk Manu-
facturing Company was conveyed to Hardy & Elliott, as trus-

tees, in trust to secure the balance due the creditors after the payment of the twenty-five per cent. of their debts.

The Farmers and Merchants Loan and Trust Company, for itself and others, then instituted this suit against the said trustees and others, claiming to own the said vendor's lien, and that it had precedence over the lien of the creditors under said trust-deed. The cause having been matured upon the bill of the complainants, and of the separate answers of the several defendants, M. Courtright, who took the part of the former, and W. L. Lance, who took the part of the creditors, and on depositions, at the hearing, the evidence being conflicting, a reference was made to a master to ascertain and report (among other things), the liens on the property and their respective priorities. He reported (among other things), that the vendor's lien had been extinguished by the taking up of the Marshall Parks note as aforesaid, and that the lien of the creditors under the trust deed was the first lien on the property. He also reported adversely to the claim of W. P. Beaman, a judgment creditor of the Norfolk Manufacturing Company for $24,225.06, principal, interest and costs, which had been omitted from the trust-deed. The report was excepted to. The court sustained the exceptions, and decreed that the vendor's lien was still subsisting, was owned by the complainants, and took precedence over the lien of the creditors under the trust-deed, and sustained the rejection of the W. P. Beaman claim. An appeal and writ of supersedeas were obtained from this decree.

Opinion fully states the case.

*J. Alfred Jones, Kean & Nelson, Leigh Robinson* and *John Goode,* for the appellants.

*Baker & Son, J. F. Crocker, W. G. Elliott, L. D. Starke* and *W. J. Robertson,* for the appellees.

LACY, J., delivered the opinion of the court.

This case is as follows: The Farmers and Merchants Loan and Trust Company, suing on behalf of itself, and of all other creditors of the Norfolk Manufacturing Company, filed its bill in the corporation court of Portsmouth city against Hardy & Elliott, trustees, the Norfolk Manufacturing Company, M. Courtright, W. L. Lance, Marshall Parks, De Haven Lance, W. Z. Hatcher, the Mercantile Bank of Norfolk, Virginia, and the Bank of Portsmouth, setting forth that by a deed, dated on the 1st day of January, 1873, the Norfolk Manufacturing Company conveyed to H. C. Hardy and W. G. Elliott, trustees, the entire property of the said company, to secure certain creditors of the said company named therein, the debts of the said creditors amounting to $37,346.79, evidenced by eighty-six negotiable notes, one-half of the said notes being payable one year from date, and the other half payable two years from date; setting out in the bill the schedule of their debts, and exhibiting the said trust deed, by which it was provided that the said company should remain in possession and carry on business until default made in the payment of the notes at maturity and the interest. That the complainant was a large creditor secured in the said deed, and was the holder of said large debts secured in the said deed, and assigned to the said complainant for value. That default had been made in the payment of all the said notes, none having been paid. That the said company had since conveyed all its property to the defendant, W. L. Lance, who then held the equity of redemption in the said property. That the creditors secured under the said trust deed of January 1st, 1873, had directed the trustees named therein to sell under the said deed, and this had not been done. That the said trustees differed as to the rights of the creditors and the true construction and effect of the deed in question, and that it would be necessary for the court to settle the disputed questions arising under the said deed. That the said company was incorporated November 4, 1871, the capital stock to be not less than $250,000, and the maximum cap-

ital not more than $1,000,000, with M. Courtright, Marshall Parks, W. L. Lance, De Haven Lance and Wm. Z. Hatcher as the corporators; the first-named was made president; the third, vice-president; the fourth, treasurer; and the second named to be general agent. That the said company through its general agent, Marshall Parks, purchased of the Atlantic Iron Works and Dock Company, their grounds and fixtures at $70,350, and a lien was reserved on the said grounds and works by the said vendor, for $23,450, in the deed of that company, dated November 18th, 1872; and on the same day, the said general agent of the company conveyed the said property to the Norfolk Manufacturing Company, at the price of $250,-000, and the said deeds are exhibited. And this was all the capital which was subscribed; and on December 3rd, 1872, this capital stock was divided into shares of $100 each, and distributed as follows: to M. Courtright, 938 shares ($100 each); to W. L. Lance, 1200 shares; to Marshall Parks, 312 shares; to De Haven Lance, 40 shares; and, to W. Z. Hatcher, 10 shares.

On December 21st, 1872, suit was brought by A. A. McCulloch, and judgment was obtained; and a judgment was also obtained by William Gilmer of William, and twenty-four other actions at law were pending against the company. In this condition of embarrassment of the company, an agreement was entered into between the incorporators of the said company, dated on the 3rd day of December, 1872, by which it was agreed, in view of the embarrassed situation of the company, as set forth above, it having become necessary to settle the liabilities of the company or to secure the same:

"First. That M. Courtright and W. L. Lance, do hereby agree to pay off and satisfy, each, one-half of the said vendor's lien still unpaid, to the Atlantic Iron Works and Dock Company, and to the payment of the same they do each bind themselves by these presents. That after the payment or satisfaction of the aforesaid lien, or before, if it should be found necessary, a deed of trust to a solvent trustee to be elected by the credit-

ors, should be executed, conveying all the property of the com-
pany, first, to secure the debts due to the creditors of the com-
pany, other than to members of the company; and, secondly,
to secure the advances made by Courtright and Lance; and then
the proceeds to be distributed among the incorporators accord-
ing to their interests," etc.

This agreement was duly executed by the said parties. A
meeting of the creditors of the company was then called by the
vice-president, who was a director and the officer who had
charge of the affairs of the company at Norfolk. At this meet-
ing, which was held on the 7th of December, 1872, it was stip-
ulated and agreed that, if the creditors of the company would
forbear to press their claims, twenty-five per cent. would be
paid in cash on all their claims, and their debts secured by a first
lien on the property, and that the company would pay off the
vendor's lien due to the Atlantic Iron Works and Dock
Company.

As to this agreement there was no dispute, and it was clearly
proved. And this agreement, after further conference among
the parties, was carried out by the execution of the trust deed
which was recorded June 7th, 1873. Thereupon, the creditors
who had obtained judgments, entered them satisfied, and the
other creditors, who had brought suit, dismissed their suits.
The twenty-five per cent. was paid in cash, and the notes exe-
cuted as agreed at one and two years. Shortly after the agree-
ment, which was made at the meeting on the 13th of February,
1873, to-wit, on the 18th of February, 1873, Courtright and Lance
arranged between themselves to carry out this agreement so far
as they were concerned, and Lance arranged with Courtright for
his one-half of the needed amount, and Courtright gave his re-
ceipt for the same, as follows, to Lance:

"Received from W. L. Lance twenty-five thousand dollars, in
his coupon bonds, payable ten years after date to the Fidelity
Insurance, Trust and Safe Deposit Company, of Philadelphia,
or bearer, secured, &c., left with me as collateral security for

the payment of two negotiable notes of the said Lance, payable
to my order, for $10,000 each, payable ninety days after date,
the proceeds of which said notes, when discounted by me, are
to be paid on account of the indebtedness of the said Norfolk
Manufacturing Company of Norfolk, to pay twenty-five per
cent. of the debts of the said company which are unsecured;
and also the balance due by the said company on account of
their purchase of their property at Atlantic City, which is evi-
denced by a note of Marshall Parks to the Atlantic Iron Works
and Dock Company for about $23,000, and interest; and for
which a lien is retained in their deed, &c., subject to which
said Parks conveyed the said property to the said Norfolk Man-
ufacturing Company. The said notes are made by the said W.
L. Lance for the purpose of raising the amount of the one-half
which he is to pay; and I am to pay from my own individual
funds or property, the same, or like amount which is paid by
him, *as heretofore agreed by an agreement made by the stockholders
of the said company* on or about the 3d day of December, 1872."

And it is provided that if the said Lance shall fail to pay the
said notes, then the said coupon bonds are not to be sold at less
than eighty per cent. of the par value thereof, without giving
Lance thirty days' notice of an intention to do so. On this re-
ceipt Lance wrote, "These bonds were assigned by me to M.
Courtright absolutely. April 17, 1873. W. L. Lance." The
two notes of $10,000 each, are exhibited with the deposition of
W. L. Lance, with his name erased, and across them is written,
"These notes have been settled by the acceptance of $25,000
in Lance's coupon bonds, at 80 cents in the dollar," and on
each the word "*settled*" is written.

The bill further sets forth that the said Courtright now
claimed that the said vendor's lien had not been paid, but has
been assigned to him for value, and that the said lien is still
subsisting as a valid lien on the property of the company, and
takes precedence over the lien of the trust-deed made to secure
the creditors; and that this claim is sustained and supported

by one of the trustees in the said trust-deed named, the said W. G. Elliott. That Courtright had assigned the said note of Marshall Parks for the said sum of $23,450 to the Mercantile Bank of Norfolk, and the Bank of Portsmouth, Virginia, and that the said banks held the said note, and claimed that it was secured by the first lien on the property, which took precedence of the lien of the trust-deed of June 7th, 1873, and that this claim is sustained by the said trustee, W. G. Elliott. But, that H. C. Hardy, trustee, differed on this point with the said Elliott, trustee; asked that a receiver might be appointed; that there might be a sale of the property conveyed in the deed, and the proceeds distributed, first, towards the satisfaction of the debts secured by the trust-deed, and the surplus paid to the parties duly entitled thereto.

On the 27th of July, 1874, the cause came on upon this original and an amended bill, an injunction was awarded, and a receiver appointed to take possession of the property and make a sale thereof.

On the 20th day of February, 1875, Courtright, W. L. Lance and the Bank of Portsmouth filed answers, and the cause came on upon the papers formerly read, these answers separately, and the general replications thereto, and the cause was referred to a commissioner to take an account of the debts; to enquire "whether the lien for $23,450, the vendor's lien, had been satisfied to the Atlantic Iron Works and Dock Company, or its assigns;" and if so, how, and by whom, &c.; also, as to the stockholders of the Norfolk Manufacturing Company, and the shares held by them respectively, and whether the said shares have been duly paid, &c.; and to take proof as to the several matters at issue in the cause, &c., &c.

The answer of Courtright denies that there was any undertaking by the company to pay off and satisfy the vendor's lien, and to give the creditors the first lien under the trust-deed executed for their benefit; claims that the vendor's lien was assigned to him; denies that W. L. Lance ever furnished any

means whatever towards the payment of the said vendor's lien, and charges that the said lien has never been paid, in whole or in part; claimed that the note of Marshall Parks, secured by the vendor's lien, was assigned to him for value; that he had assigned it, and that there was a valid and subsisting lien therefor in favor of his assigns, which takes precedence over the lien of the trust-deed; that he had assigned the said note to the Mercantile Bank of Norfolk, &c.; that he was unable to discount the notes of Lance, and that as Lance could not pay his one-half, that *he did not pay his one-half;* that afterwards, he bought the debts against the Atlantic Iron Works and Dock Company, and had them assigned to him; that he so arranged with the creditors of the Atlantic Iron Works and Dock Company, that he bought the judgments, paying $10,000 in cash, and gave his acceptances for $10,000 more; *at the maturity of the said acceptances he retired them by paying* a small portion in cash, and borrowed the money from the Mercantile Bank of Norfolk, Virginia, upon the pledge of these judgments against the Atlantic Iron Works and Dock Company, as collateral security for the payment of his acceptance for certain drafts or bills of exchange which were discounted for his benefit. That shortly after the actual assignment to him of the said claims against the Atlantic Iron Works and Dock Company, which was made upon the retiring of the first aforesaid acceptances, an arrangement was made by him with the Atlantic Iron Works and Dock Company, by which he assigned to the said company his claims against that company, in exchange for the note of Marshall Parks, secured by the said vendor's lien for $23,450, with interest; and this arrangement was confirmed by the corporation court of Norfolk city, in which a suit was pending between the Atlantic Iron Works and Dock Company and T. J. Corprew's personal representative and others, for the settlement of the affairs of the said company, by decree of the said court entered in that cause, on the 4th of August, 1873. By the said decree the president of the said company was di-

rected to assign the said note to him; this assignment was made, and he then immediately substituted the said note, secured by the vendor's lien as aforesaid, as collateral for the said acceptances which had been discounted for his benefit, in the place of the said judgments and note (his claims against the Atlantic Iron Works and Dock Company) which he had surrendered to the said company. That when his acceptances to the bank matured, he was unable to meet them, and he then sold the Parks note to the said bank, and received his own indebtedness in part payment for it.

W. L. Lance in his answer distinctly asserts that the vendor's lien was paid off and extinguished in accordance with the agreement recited between himself and Courtright; that it was paid off by their (himself and Courtright) advancing a specific sum for that purpose; that it was the duty of the corporation to pay off and discharge this lien, and that it was done.

The banks named above answered, claiming the assignment without notice, and for value, and insisting on their right to the vendor's lien, as still subsisting and unsatisfied.

The depositions of the parties were taken, and the testimony of other witnesses.

The commissioner reported on the 27th day of November, 1880. In this report the vendor's lien is reported as satisfied and extinguished; an account of the debts is filed with the report; an account of the stockholders, and the shares paid in by them, as stated in the bill; and in his account of the debts, reported adversely to the claim of W. P. Beaman, a judgment creditor of the Norfolk Manufacturing Company for $24,425.06, principal, interest and costs.

To this report exceptions were filed. And the cause coming on, on the 16th day of October, 1882, upon the said report, the exceptions thereto, etc., and the argument of counsel, the corporation court of Portsmouth held that this vendor's lien was not paid and satisfied, and was a valid lien upon the property, to which the said banks were entitled as a first lien on the

property. That the lien of the trust-deed was the second lien, to which the creditors of the company secured in the deed were entitled ratably, and others, not secured in the deed, but allowed in the commissioner's report; sustained the commissioner in his rejection of the Beamer judgment; and held that Courtright was entitled to a third lien for a certain debt filed with his answer, and not reported by the commissioner; and appointed commissioners to sell the property not disposed of. From this decree an appeal was allowed to this court, June 4th, 1883.

The question first to be considered here, is as to the priority of the several liens asserted against the property of the Norfolk Manufacturing Company, which is the same property held by the Atlantic Iron Works and Dock Company, which was purchased from the said Atlantic Iron Works and Dock Company by the said Norfolk Manufacturing Company; for the purchase by Marshall Parks, the general agent, was a purchase for and by the Norfolk Manufacturing Company, to which last named company he conveyed it on the same day that he bought it; and it is a concessum in the cause, and abundantly established, that the purchase by Parks was for the company, and the payments made by the company, so that the Marshall Parks note for the $23,450, for the unpaid purchase money, was simply the debt of the company.

The ventures of the company all proving quickly disastrous, when the debts were pressed against the company by twenty-six suits at one term of the court, aggregating $40,000, and other clamorous demands, the incorporators of the company being, as they were unquestionably, liable for these debts, to the amount of their stock, which aggregated nominally $250,000, the agreement of Courtright and Lance to pay the unpaid purchase money due by the company, and to arrange satisfactory security for the other debts, was only an agreement to pay their own debts; and when Lance paid into Courtright's hands $25,000, at 80 cents in the dollar, making $20,000, to meet the vendor's lien, and the twenty-five per cent. of the debts secured

by the trust-deed, the debt due for the vendor's lien became, as
between Lance and Courtright, what it had all along been as to
the creditors, *the debt of Courtright*, so that when Courtright ac-
quired the debt by assignment, it was an assignment to him of
his own debt, in any aspect of the case in which he shall be con-
sidered.   The minimum amount of the stock of this company
was $250,000.   Only about $70,000 had ever been paid up by
any and all of the stockholders.   The stock and other property
of private corporations is deemed a trust fund for the payment
of the debts of the corporation, so that the creditors have a lien
or right of priority of payment on it, in preference to any of the
stockholders in the corporation.   Story's Eq. Jur. § 1252; *Bart-
lett* v. *Drew*, 57 N. Y. 578.

The liability of a stockholder is upon his subscription; that
is to say, upon his obligation to contribute to the capital stock,
which is a trust fund for the benefit of those to whom the cor-
poration, as a corporation, becomes liable.   The subscription is
part of the assets of the corporation, at least so far as the cred-
itors are concerned.   *Sawyer* v. *Hoag*, 17 Wall. 610; *Patterson*
v. *Lynde*, 106, U. S. S. C. R. 521; *Ladd* v. *Cartwright*, 7 Oreg.
329; *Webster* v. *Upton*, 1 Otto, 71; Id. 60 and 47; 22 How. 387.

In this case only $70,350 had been paid, while Courtright's
share was $93,800, and W. L. Lance's share was $120,000.
Courtright had only paid up $26,381.25, and Lance (W. L.)
$35,175.

The action of the company in agreeing to pay the vendor's
lien, was an agreement to meet its own obligation.   Courtright's
assent might have fairly been presumed against him, upon the
authorities of numerous decisions cited at bar.   But in this
case, the precedent authority and the subsequent ratification are
both expressly given as has been seen.   It is distinctly proved
that Courtright received from Lance the funds necessary to pay
off one-half of this debt, the subject of dispute here.   The lia-
bility of the stockholder, to the extent of his liability under the
charter, is not simply as such, but it is a personal liability as

surety for the company. It is virtually and in effect a liability upon a contract, and the mutual agreement of the parties; not indeed, in form an express personal contract, but an agreement of equally binding obligation, consequent upon and resulting from the acts and admissions or implied assent of the parties.

The second ground is upon the view that the legislature, by subjecting the stockholders to personal liability for the debts of the company, thereby removed the corporate protection from them as corporators, and left them liable as partners and associates at common law; that is the clause which pledges to the creditors of the corporation the liability of the stockholders to the extent of their stock. Opinion of Mr. Justice Nelson, in *Hathorn* v. *Calef*, 2d Wall; *Woodruff* v. *Trapnall*, 20 Howard, 190; *Curran* v. *Arkansas*, 15 Howard, 304; *Moss* v. *McCulloch*, 7 Barb.; *Conant* v. *Van Shaick*, 24 Barb. 87.

But Courtright's liability is not dependent upon this construction of the law. He is so by his express and unequivocal contract.

That this real estate was the property of the partnership cannot be denied. It was purchased for and appropriated to partnership purposes, paid for out of partnership funds, and it is partnership property, although the legal title was taken in the name of one of the partners. Equity holds him trustee for the firm, and this may be proved by parol. Story on Partnership, § 92, 93; Story's Eq. Jur. § 694; *Hoxie* v. *Carr*, 1 Sumner R. 173; *Thornton* v. *Dix*, 3 Brown's Ch. Rep.; *Fairchild* v. *Fairchild*, 64 N. Y.; *Traphagan* v. *Burt*, 67 N. Y.; *King* v. *Weeks*, 70 N. C.

That the agreement of Lance as to this property, was binding on all the incorporators as the act of their accredited agent, cannot be doubted. Smith on Mercantile Law, p. 48, 58, 59, 61. And as an entire firm may be bound, so it may be obviously discharged by the act of one. Smith's Mercantile Law, 67; Story on Partnership, § 107. And the payment or satisfaction of a debt by one partner is a payment and extinguishment

of the debt as to all. That the partnership debt represented by the note of Marshall Parks has been paid, is abundantly proved, and indeed it is admitted. As to the original vendor, the debt is extinguished. The Atlantic Iron Works and Dock Company have no longer any claim upon it. It was surrendered to Courtright in exchange for its own indebtedness, and was transferred to Courtright; that is, he became his own creditor. The note was long past due when transferred to Courtright, and when he transferred it to the Mercantile Bank it had been paid by the person bound primarily for its payment. What was there in the note for Courtright to assign beyond his interest in it? And what that more than Courtright's obligation? and the assignee took it, subject to all the equities against Courtright; which being satisfied, left nothing for it to take, as they went to the entire obligation; the debt was extinguished. There was nothing left which Courtright could assign, or which the assignee could take. It was a non-negotiable note, assigned more than eighteen months after maturity to the bank at a discount of $4,000.

As the assignee stands in the place and upon the rights of the assignor, he is subject to, whatever defences may be made against the assignor. The assignee takes it subject to antecedent equities, and the assignee must allow all just discounts against the assignor.

What would have been the rights of Courtright against the property of this company if he had brought suit upon the note? What lien could he have enforced? This is answered by what has gone before. The debt being extinguished, the lien expires with it. A lien is a hold or claim which one person has upon the property of another, as a security for some debt or charge, and when the debt is paid, the right to subject or charge the property is gone and extinguished. *Prentice* v. *Zane*, 2 Gratt. 262; 41 Barb. 32; *Small* v. *O'Bannan*, 7 B. Mon.; *Bowen* v. *Thrall*, 28 Vermont, 382.

But it is an inevitable conclusion from the evidence and cir-

cumstances of this case that the assignee had the fullest notice and knowledge of all the circumstances under which Courtright had acquired and held this note, and resorted to these methods to save, if possible, the debts already due to it by Courtright, rendered precarious by his failing circumstances. It follows that the corporation court of Portsmouth city erred in the decree complained of, in holding that the vendor's lien was a valid existing first lien on the property of the Norfolk Manufacturing Company, and the same must be reversed upon that ground.

The next question which is raised in this case is, that by its decree of the 16th of Oct'r, 1882, the corporation court of Portsmouth city, held that the said deed of trust, dated Jan'y 1st, 1873, and recorded June 7th, 1873, did not enure to the benefit of a judgment of W. P. Beaman, recovered in the corporation court of Norfolk city, June 13th, 1874, for $20,000. The judgment was recovered against the said company on account of a breach of a contract made with the said company on the 11th of July, 1872, which breach occurred prior to the day when said deed of trust was recorded. The commissioner in said report, filed in the cause November 27th, 1880, disallowed this claim against the company, being of opinion that the said Beaman judgment was not such a claim as would, or should, be embraced in the account with the said deed of trust creditors. The claim of this judgment creditor is not disallowed by the said commissioner, nor by the court which confirmed the commissioner's report on this point, on any ground which goes to or affects the validity of the said judgment as a debt against the said company. This is admitted, or if not admitted, is established, and finally determined by the judgment of a court of competent jurisdiction, to which the company was a party, and from which no appeal has been, or can now be taken. But it is disallowed by the commissioner and by the court upon the ground that it is not included in the trust-deed, nor in the schedule of debts contained therein, and upon the ground that at the time of the execution of the deed, Beaman was not a creditor of the said

company; the said commissioner saying, that under no circumstances could any portion of the said judgment (except that accruing between the 28th of March, 1873, the date of the release, and the 27th of May, 1873, the date of the acknowledgment of the deed) be considered. But this being a judgment founded upon a claim for unliquidated damages, where every matter is submitted to and determined by a jury, who consider all the circumstances, it would seem almost an impossibility for the commissioner to separate such a claim, or to apply or to apportion to different periods any certain or determined portions thereof.

The question of the effect of the release of the 28th of March, 1873, referred to by the commissioner, was drawn in question and settled in the suit at law between the parties, in the corporation court of Norfolk, and was not a subject for the commissioner's consideration; nor for the judgment of the corporation court of Portsmouth city; nor in this court in this case; it is *res judicata*. The claim of Beaman is not rested upon any such question. He appears before the commissioner and before the corporation court of Portsmouth city and proves his claim, presents his judgment for entry in the account of the debts of the company. The commissioner says he is not included in the deed. This is obvious. His debt is omitted from the schedule therein. He does not pretend that he is included in the deed. His claim is that at the time the deed was made, the creation of the lien of the deed of trust, dated January 1st, 1873, and recorded June 7th, 1873, he was an existing creditor of the said manufacturing company, and that the deed enured ratably to his benefit with all the creditors named therein, under section 63 of chapter 57 of our Code. By that section it is provided that—

"The stock of every such company shall be deemed personal estate, and be transferable in such manner as shall be prescribed by the by-laws of the company. And for all debts which shall be due and owing by the company, the persons composing

the company at the time of its dissolution, shall be individually responsible to the extent of their respective shares of stock in said company, and no farther. And if such company shall create any lien or incumbrance on its works or property, for the purpose of giving a preference to one or more of the creditors of the company, over any other creditor or creditors, except to secure a debt contracted or money borrowed at the time of the creation of the lien or incumbrance, *the same shall enure to the benefit, ratably, of all the creditors of the company existing at the time such lien or incumbrance was created.*"

Such deed is not avoided by the statute, but is enforced for the common benefit of all existing creditors. This the decree of the court recognized, and the lien of this deed was held by the court in its decree to enure ratably to the benefit of certain omitted creditors, some of them for large amounts, along with the creditors named in the schedule of the deed, and specifically secured therein; but this judgment is rejected by the court upon the ground that Beaman was not an existing creditor at the time of the creation of the lien.

This deed was dated January 1st, 1873, but not recorded until June 7th, 1873. In the absence of proof to the contrary, it would be presumed to have been delivered on that date. If a deed has a date, the law intends it to have been delivered at that date, and this, notwithstanding a subsequent acknowledgment, but this presumption will yield to evidence to the contrary. *Raines* v. *Walker*, 77 Va. Rep. 92; *Harman* v. *Oberdorfer*, 33 Gratt. 497; *Harvey* v. *Alexander*, 1 Rand. 219; *Rodgers* v. *McCluer*, 4 Gratt. 81.

In this case it is an uncontroverted fact, that the deed was not executed on the day of its date; every witness who has testified in the cause proves that it was not agreed on and not delivered until long after the day of its date; and this intendment of the law must yield to the clear proof in the cause.

The question remains, was Beaman a *creditor* of the company on the day of the creation of the lien of the trust-deed?

It is admitted that the contract between the parties was made July 11th, 1872; that it was a purchase on the part of the company of timber and lumber from Beaman, needed by it in the prosecution of its business as a manufacturing company; that this timber and lumber were delivered to the company long before the creation of this deed of trust lien; that on the 28th of March, 1873, the company had made default on their acceptances, on account of this contract, and on that day arranged to meet these; and the contract proceeded between the parties according to its terms toward complete fulfillment, by the cutting and delivery of lumber by Beaman; and it is proved, that before the execution of the trust-deed lien, Beaman had given notice of his claim; that his claim for these damages was afterwards recovered; and that at one of the meetings of the company with its creditors, February 12th, 1873, the said Beaman attended by counsel, and filed his claim under this contract not yet determined as to amount, and his counsel was not only present, but acted as secretary of the meeting. Beaman was named in the deed as to the acceptances arranged on the 28th of March, 1873, which amounts were paid by the company not only before default made under the deed, but before the execution of the trust-deed, and before suit brought by the creditors. Under this deed it will be remembered the company obtained · as to three-fourths of its debts, a credit of one and two years, and the one-fourth to be paid in cash was actually paid by the said company to the creditors named therein, and to others not named in the deed, but admitted by the company to be creditors.

Was Beaman a creditor of the company at the creation of the lien of the trust-deed? If so, the statute expressly prohibits the corporation from making a lien to prefer one or more creditors to him, it being declared, as we have seen, that all such liens of preference shall enure to the benefit of all the existing creditors ratably, unless the lien was created to secure a debt contracted or money borrowed at the date of the lien.

A creditor is one who has the right to require the fulfillment of an *obligation* or *contract.*

Beaman, at the date of the creation of the lien, had furnished the company the timber and lumber, according to the terms of the contract made by the company with him. The company had not paid for it, and he was demanding payment therefor, and had served formal notice on the corporation of his claim, that the company was so indebted to him, for its failure to comply with its contract with him. The counsel for Beaman suggest this demand of his as the moving cause for the prompt execution thereafter of this trust deed, which had been prepared for months, and often discussed between the parties, but not before executed.

Whether this trust deed was made and executed to avoid this large debt or not, is immaterial. If Beaman was an existing creditor at the date of the creation of the lien, it was not in the power of the company to prefer one creditor over another. The law makes the deed the ratable security of all the existing creditors. The cause of action arose before the creation, the goods were delivered at the agreed price before the creation of the lien. If a man takes up goods of a tradesman, says Mr. Blackstone, upon an implied contract to pay as much as they are reasonably worth (in this case the contract was express, to pay an agreed price), the right accrues to the creditor, and is completely vested in him at the time the agreement is made, and the law only gives him a remedy to recover the possession of that right which already in justice belongs to him. In this case the verdict of the jury did not give him a new right, but ascertained an old one, which existed by virtue of the contract between the parties, and their transactions thereunder. We cannot but conclude that Beaman was a creditor at the time the trust-deed lien was created.

Does the trust-deed in question come under the exception in the statute provided? Was the lien made for a debt then contracted, or for money at that time borrowed? Its plain terms

refute the suggestion. It was given to secure debts before that time contracted, and the company borrowed no money at that time secured in that deed.

We reach the conclusion then, that under the law, Beaman is entitled to share, as to his judgment, ratably with the other creditors existing at that time, in the benefits of the said deed, whether secured therein or not. And the decree of the corporation court excluding him from its benefits is erroneous on that ground also, and must be reversed and annulled.

The decree was as follows:

This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the corporation court of Portsmouth erred in its decree of the 16th day of October, 1882, in so far as it decided that the lien preserved by the Atlantic Iron Works and Dock Company in its deed to Marshall Parks, bearing date the 18th day of November, 1872, on the property therein conveyed, for $23,450, with interest from the 8th day of March, 1871, has not been paid, satisfied and discharged, and that the same is a valid and subsisting lien on the property conveyed by the said deed, for the payment of the said sum, and is a first lien on the said property, and that the defendants, the Mercantile Bank, of Norfolk, Virginia, and the Bank of Portsmouth, as the assignees and holders of said note, are entiled to the said lien, and to the same as the first lien on the said property.

And the court is further of opinion that the said court erred in its said decree, in deciding that the lien created by the Norfolk Manufacturing Company, by its deed to the defendants, H. C. Hardy and W. G. Elliott, trustees, bearing date January 1st, 1873, is the second lien on the said property subject to the aforesaid vendor's lien.

And the court is further of opinion that the said court erred in its said decree in deciding that W. P. Beaman was not an existing creditor of the Norfolk Manufacturing Co., as to his said claim, mentioned as Item No. 4, in Account No. 6, of the report of commissioner, C. W. Murdaugh, and disallowed by the said report, to-wit: a judgment against the said Norfolk Manufacturing Company for $20,000, with interest thereon from May 22nd, 1874, and $95.06 costs, at the time that the lien in the said deed in trust from the Norfolk Manufacturing Company to the said H. C. Hardy and W. G. Elliott, trustees, was created; and that the lien of the said deed in trust does not enure to the benefit of said W. P. Beaman as to his said claim.

It is therefore decreed and ordered that the said decree be reversed and annulled in so far as it is herein declared to be erroneous, and affirmed in all other respects.

And it is further decreed and ordered that the appellees do pay to the appellants their costs by them expended in the prosecution of said appeal aforesaid here.

And this court proceeding to correct the errors in the said decree of the corporation court of Portsmouth, it is decreed and ordered that the note of Marshall Parks for $23,450, with interest from the 8th day of March, 1871, given to the Atlantic Iron Works and Dock Company, has been paid and satisfied, and that the lien reserved to secure the said note is extinguished, and that there is no lien on the property of the Norfolk Manufacturing Company therefor. And it is further decreed and ordered that the lien created on the property of the Norfolk Manufacturing Company in the trust-deed to H. C. Hardy and W. G. Elliott, trustees, recorded on the 7th day of June, 1873, and filed as exhibit "A" with the plaintiff's bill, is the first lien on the property of the said Norfolk Manufacturing Company, and that the said lien enures to the benefit ratably of all the creditors of the Norfolk Manufacturing Company existing at the time of the creation of the said lien, as ascertained in the said decree, and that the said W. P. Beaman was a creditor of

the said company, whose debt was existing at the time of the creation of the said trust-deed lien, and that he is entitled to share ratably with the other creditors named in the decree, in the benefits of the said lien so created, as to his claim mentioned as Item No. 4, in Account No. 6, of the report of commissioner C. W. Murdaugh, being a judgment against the said company for $20,000, with interest from May 22nd, 1874, and $95.06 costs.   And the said decree being corrected in accordance with the foregoing opinion and views herein, is affirmed in all other respects.

.   And it is further decreed and ordered that the defendants in the said corporation court of Portsmouth do pay to the plaintiffs, their costs by them expended in the prosecution of their suit in the said corporation court of Portsmouth.

Which is ordered to be certified to the said corporation court of Portsmouth.

DECREE REVERSED *in favor of Hardy and Elliott, as trustees, and of W. P. Beaman.*