## Staunton

### LEFTWICH AND OTHERS V. EARLY.

September 11, 1913.

Absent, Keith, P., and Whittle, J.

1. DEEDS—*Delivery—Parol Evidence.*—The rule that parol evidence is inadmissible to show that a deed perfect on its face was delivered to the grantee therein on condition has no application where the question is whether there was such a complete and perfect delivery by the grantor to the grantee as to vest a perfect and indefeasible title in the latter. This is a question of fact to be determined by the circumstances of the case, and cannot, in the majority of instances, be declared as a matter of law.

2. DEEDS—*Delivery—Necessity Of.*—Formal delivery of a deed is not essential to its validity if there be acts evidencing an intention to deliver, but an essential requisite to a good deed is that it be delivered by the grantor himself or his attorney, and the deed takes effect only from such a delivery.

3. DEEDS—*Delivery—Intention—Evidence.*—The delivery of a deed is essential to its validity. The fact of delivery is one of intention which must be manifested by some express act of the grantor, or by acts, words or conduct manifesting an intention to deliver, and, by such act of delivery, the grantor must intend to lose control or dominion over the deed, and that it shall pass title at the same time to the grantee.

4. EVIDENCE—*Lost Deed—Proof Required.*—In suits to set up a muniment of title by parol evidence courts of equity require strong and convincing proof of the former existence of the evidence of such title, its loss and its contents.

5. DEEDS—*Delivery to Stranger—Declaration of Use.*—While a deed may be delivered not only to the grantee himself, but to a stranger for his use, or declared to be delivered although the grantee be absent, yet, if delivered to stranger, without any declaration or other matter to show that it is for the use of the grantee, it is not a sufficient delivery.

Appeal from a decree of the Circuit Court of Grayson county. Decree for the defendant. Complainants appeal.

*Affirmed.*

The opinion states the case.

*J. S. Bourne* and *H. A. Cox,* for the appellants.

*J. M. Parsons* and *R. L. Kirby,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

Josephine Willets was seized and possessed of a certain tract or parcel of land lying in Grayson county, Virginia, containing eighty acres, more or less, which she acquired by conveyance of date August 25, 1881, and being so seized of said tract of land, the said Josephine Willets, in the year 1893, intermarried with N. C. Leftwich, and N. C. Leftwich departed this life some time in the year 1905 intestate, leaving the said Josephine, his widow, and the following heirs at law surviving him: Celia Leftwich, his mother, Joseph Leftwich, and C. E. Leftwich, brothers of the whole blood, and Charlotte Evans, a sister of the half blood. The said Josephine Leftwich afterwards intermarried with one Don Early, and at the first rules held in the clerk's office of Grayson county circuit court, February, 1907, Celia Leftwich, mother, and Joseph Leftwich and Charlotte Evans, brother and sister, of the said N. C. Leftwich deceased, filed their bill in this cause against the said Josephine Early, the purpose of the bill being to have partition of the said tract of eighty acres of land between the plaintiff and the defendant, the bill alleging that some time in the year 1895, the defendant, while the wife of the said N. C. Leftwich, conveyed to him one-half undivided interest in said tract of land in fee simple with general warranty of title; that said N. C. Leftwich died intestate seized and possessed of said one-half undivided interest in said tract of land, and that complainants were unable to file the deed or copy thereof conveying to him this undivided interest in the land, as an exhibit with their bill,

because the deed was never admitted to record and has since the death of the said N. C. Leftwich been destroyed by his widow, the defendant, without the consent of his heirs at law, or either of them. The bill also sought partition of one-half an acre of land, alleged to have been owned by the said N. C. Leftwich at his death, but this parcel of land is not involved in this controversy.

The said Josephine Early filed her answer to said bill, in which she admitted the ownership of said tract of eighty acres of land alleged in the bill, and also her marriage to the said N. C. Leftwich, and that after his death she intermarried with said Don Early, but denied emphatically that she ever at any time conveyed to her said husband, the said N. C. Leftwich, a one-half undivided interest in said tract of land or any interest therein except as in her answer stated. Her answer then avers: "That at the time of her marriage to the said N. C. Leftwich he did not own any land; that they commenced and continued to live and keep house on the said eighty acres of land until his death; that this land was her sole and separate property; that there were no living children born to her of her marriage with the said N. C. Leftwich; that she was devoted to him and felt that in case of her death during his life that he might be turned out of a home; that he had become attached to her, and after frequent conversations with him on the subject she decided to give him some showing on the land during his life time, and from the date of her death to the date of his death." Her answer further avers: "That after having reached this conclusion, she advised her said husband of her said decision and intention and he caused a writing to be prepared, which was afterwards signed by her, and by the terms of which he took a life estate in one-half of said land in the event of his outliving her; that it was understood and agreed between them that this paper would never be worth anything to him unless he outlived

her, and for this reason it was also agreed that it should not take effect, or be delivered to him, except at her death and in the event she died before he died." She further avers: "That from the day the said paper was signed and acknowledged by her until her said husband's death, and long after, it remained in her possession; that it being the understanding between them that it was to be of no effect unless he outlived her, and that in case of his death before her it would be destroyed, and feeling that the paper had served its purpose and that henceforth it was worthless, she paid no attention to it, and for aught she now remembers she may have destroyed it along with other of her said husband's papers; but be this as it may she is unable to find the same." Said defendant further says: "That this was the only interest or claim her said husband ever had to the said tract of land, in any way, and that this was not considered by her or her said husband as giving him any interest in the said land until her death, leaving him living, and that it was their intention in the execution of the said paper simply to protect him against the contingency of her dying first." The answer further states that she, the defendant, paid out a large sum of money for her said husband during his last illness and that the claims asserted by complainants are neither legal nor equitable, etc.

Upon the hearing of the cause on the pleadings and depositions of witnesses examined for both complainants and defendant the circuit court being of opinion "that there has not been shown such delivery of the deed in controversy alleged to have been made by defendant, Josephine Leftwich, now Josie Early, to N. C. Leftwich for one-half undivided interest in and to the eighty acre tract of land mentioned and described in the bill as the law requires, and without such delivery said deed, even if made, is invalid and that it did not pass title to N. C. Leftwich" adjudged and decreed that the complainants have no interest

in the said eighty acres of land, and that as to this tract of land the bill be dismissed with costs to the defendant. From said decree Celia Leftwich and her co-complainants obtained this appeal.

A decision of the case turns upon whether there was such delivery of the deed in question as was necessary to vest in the grantee, N. C. Leftwich, a perfect and indefeasible title to one-half undivided interest in and to the said tract of land.

The contention of appellee throughout, and which was sustained by the circuit court, is, not that the deed in question was delivered on condition, but that it was never delivered at all, and that it was never to be delivered or taken possession of by the grantee therein until after the death of the grantor, leaving the grantee surviving her, and that even then it only conveyed to him a one-half interest in the eighty acre tract of land for and during his life.

The authorities are uniform in holding that parol evidence is admissible to prove that a deed, perfect on its face, was delivered to the grantee on condition, but this rule does not control in a case where the question is whether there was such complete and perfect delivery of the deed from the grantor to the grantee as to vest in the latter a perfect and indefeasible title to land or an interest therein, which is a question of fact to be determined by the circumstances of the case, and cannot, in the majority of instances, be declared as a matter of law.

"Formal delivery is not essential if there be acts evidencing an intention to deliver, but an essential requisite to a good deed is that it be delivered by the grantor himself, or his attorney, and the deed takes effect only from such a delivery." 2 Min. Inst. (4 Ed.) p. 731, and authorities there cited.

The date of a deed is *prima facie* the date of delivery, but only *prima facie*. *Ferguson* v. *Bond*, 39 W. Va. 561,

20 S. E. 591; *Harman* v. *Oberdorfer,* 33 Gratt. (74 Va.) 497; *Raines* v. *Walker,* 77 Va. 92; *Hardy* v. *Norfolk Mfg. Co.,* 80 Va. 404.

"The question of the delivery of a deed is one of intention, and the delivery is complete when there is an intention manifested on the part of the grantor to make the instrument his deed." *Martin* v. *Flaherty,* 13 Mont. 96, 32 Pac. 287, 19 L. R. A. 242; 40 Am. St. Rep. 415.

In the case just cited, the opinion quotes from 1 Dev. on Deeds, sec. 262, as follows: "As no particular form of delivery is required, the question whether there was a delivery of the deed or not, so as to pass title, must in a great measure, where it is not clear that an actual delivery has been effected, depend upon the peculiar circumstances of each particular case. The question of delivery is one of intention, and the rule is that a delivery is complete when there is an intention on the part of the grantor to make the instrument his deed. The main thing which the law looks at is, whether the grantor indicates his will that the instrument should pass into the possession of the grantee; and, if that will is manifest, then the conveyance inures as a valid grant, although, as above stated, the deed never comes into the hands of the grantee. A deed does not become operative until it is delivered with the intent that it shall become effectual as a conveyance. Whether such intent actually existed is a question of fact to be determined by the circumstances of the particular case." 2 Min. Inst. *supra; Tyler* v. *Hall,* 106 Mo. 313, 17 S. W. 319, 27 Am. St. Rep. 337.

In the last named case it was held that "a deed left by the grantor in a place where it is accessible to the grantee does not constitute a delivery in the absence of an intention on the part of the grantor to deliver and of the grantee to accept . . . So long as the delivery of a deed remains incomplete, a grantor can change his intent, and destroy the deed if he so desires."

In *Shuffert* v. *Crote,* 88 Mich. 650, 50 N. W. 657, 26 Am. St. Rep. 316, the opinion of the court says: "Evidence showing that a conveyance of land was signed, acknowledged, witnessed and handed to grantee, who was a son of the grantor, to whom the deed was immediately returned; that the father said that he calculated to deed the property to his son, so that there would be no trouble after his death, but that he would not like to see it go on record in his life-time; and the son replied, he need not be afraid of its going on record, and that he (the father) could keep it himself—does not show a delivery of the deed; and if the grantor subsequently destroyed it and conveyed the same property to another person in consideration of service performed and to be performed, the latter acquired the title."

In *Parrott* v. *Avery,* 159 Mass. 594, 35 N. E. 94, 22 L. R. A. 153, 38 Am. St. Rep. 465, the Supreme Court of Massachusetts held, "That a deed is not delivered though it is executed in the presence of a witness, if there is no declaration on the part of the grantor that he intends it to take effect at once, and he retains it in his possession during his life-time putting it in a chest and bequeathed the chest to the grantee." *Stone* v. *French,* 37 Kan. 145, 14 Pac. 530, 1 Am. St. Rep. 237.

The authorities cited, to which many more might be added if deemed necessary, hold that the delivery of a deed is essential to its validity; that the fact of delivery is one of intention must be manifested by some express act of the grantor, or by acts, words or conduct manifesting an intention to deliver, and that by such act of delivery the grantor must lose control or dominion over the deed in question; and that it is his intention that it should pass title at the time and that he (grantor) should lose control over it.

The deed in question in *Tyler* v. *Hall, supra,* under

which the defendant claimed title from his father, the original source of title, was found by the administrator of the father in a desk kept by him prior to his death and under his control, among other papers belonging to him at his death, and was afterwards given into the defendant's (grantee) possession by the administrator of the grantor. Held, that the burden of proving that the deed was delivered before the father's death was on the defendant.

The suit out of which this appeal arises is in effect a suit to set up by parol evidence a muniment of title to land, and in such cases courts of equity require strong and convincing proof of the former existence of such title, its loss, and its contents.

This court held in *Barley* v. *Byrd,* 95 Va. 317, 28 S. E. 329, that "courts of equity, in exercising their jurisdiction to set up a lost instrument which is to constitute a muniment of title require strong and conclusive proofs of its former existence, its loss and its contents."

It appears from the record that appellee and her husband, N. C. Leftwich, were unlettered, ignorant negroes; the husband being impecunious, while the wife owned the land conveyed to her as above stated, and was economical and thereby enabled to do much more for the comfort of her husband in health, as well as in sickness, than he was ever able to provide for himself. They were married in 1893 and the deed here in question was signed and acknowledged by her in 1895, as she frankly admits, but was never delivered, nor was it to be delivered unless her husband survived her, in which event it was then and only then to be recorded, whereby he would own and control a one-half undivided interest in her land during his life, so that he might not be dispossessed of a home during his life. There is no proof that the husband, N. C. Leftwich, ever in his lifetime asserted title to any part of this land, or denied the ownership or control thereof in his wife. The

wife (appellee) states fully in her answer in this cause the nature of the transaction under review, and in her deposition, taken in her own behalf, the statements she makes are not only entirely consistent with those made in her answer, but are consistent with the circumstances surrounding her and her said husband during their married life.

The only disinterested witness introduced by appellants whose evidence at all tends to prove a delivery of said deed within the meaning of the law is one M. L. Vaughan, who is a man of some prominence in the county in which the appellee and her husband, N. C. Leftwich, resided during the period from the date of their marriage till the death of the husband; but Vaughan was not positive as to the material facts with respect to which he undertook to testify, and, in fact, not only are the statements made by him contradicted by proof of other facts and circumstances, testified to by others, but when the testimony given by him is read as a whole he appears to have a slippery memory, and has to admit that he was mistaken as to the material facts with respect to which he had undertaken to testify.

Not only did N. C. Leftwich in his life-time never assert a legal claim to an interest in the land of his wife, but no one has testified in this case that he ever was financially able to pay $600, the amount that Vaughan states was the consideration named in the deed in question, "as well as he could remember," and there is no other evidence than that of Vaughan contradictory of the statement of appellee to the effect that the deed only stated a nominal consideration.

Every witness called on behalf of appellants, except said M. L. Vaughan, was a close relative of N. C. Leftwich, deceased, and directly interested in the result of this litigation. Much of the evidence given by these witnesses is wholly irrelevant to the issue, consisting largely of loose conversations with N. C. Leftwich not in the presence of

appellee, or with the latter after the former's death, which in no way committed her to any concession helpful to the appellants in this cause, while the statements of other of these witnesses are either discredited or flatly contradicted by facts proven.

P. A. Reavis, a witness fifty-two years of age, a farmer, and who had known N. C. Leftwich from the time he was a small boy; T. E. Brannock, deputy clerk of the circuit court of Grayson county, a deputy treasurer and tax collector of the county in 1904; and Wilson Blair, also a prominent farmer—all totally disinterested witnesses, say in substance that not only did N. C. Leftwich never assert title to an interest in the land in controversy, but disclaimed any interest in his wife's land, and all along and within a short time of his death denied that he owned any land.

Appellee testified that in the year 1894 or 1895 she executed and acknowledged "what they called a deed, and that their agreement at the time was, that if I would make him these papers in case I died first, that he was to hold an interest in the place his life-time, and in case he died first the papers were to be destroyed and to be no more account. I to hold the paper in my possession until the death of one or the other of us. He was to have what remained at my death his life-time. It was agreed for me to hold it (the deed) in my possession, and if I died first it was to be delivered to him and it was to go on record, and if he died first it was to be destroyed. After his death I destroyed all the Leftwichs' papers and I suppose it was destroyed with them. It was in my possession from the time it was acknowledged until the time it was destroyed, except one time when I handed it to J. M. Parsons. He came to my house and sent Norvell (her husband) in after the paper, and I would not send it. He, Parsons, came in and explained to me why he wanted it. He said that he thought

he could use it to advantage in railroad election in counting the vote. He wanted to see if he could. He receipted me for the paper and promised to return it when he was through and did so. He sent it to me by mail. I do not know M. L. Vaughan. He never received the paper from me and never passed my house and returned this deed." Appellee denies positively the statements made by the witnesses for appellants as to conversations with her husband with reference to said deed or her land, alleged to have taken place in her presence; in fact, she denies practically every statement made by appellants' witnesses except the fact that she made the deed to her husband in pursuance of the agreement and understanding stated by her in her answer and in her examination as a witness, and that she destroyed it in pursuance of this understanding, and denies that she ever delivered the deed to her husband for any purpose. She asserts positively that it was never out of her possession or control except on the occasion when at the request of J. M. Parsons she let him take it away with the understanding that he would return it to her, which he did. It is not pretended that appellee understood the purpose for which Parsons wanted the deed or intended by the loan of it to him to confer any benefit upon the grantee, N. C. Leftwich.

The weight of the evidence is decidely to the effect that apellants' leading witness, Vaughan, never saw the deed by reason of its having been delivered to him by appellee or N. C. Leftwich for any purpose, and the contention, were it made, that appellee, an ignorant negro woman, by complying with the request of Parsons in the manner she did, intended that the deed should pass title, at the time, and that she should lose control over it, could not be maintained. Whilst a deed may be delivered, not only to the grantee himself, but to a stranger for his use, or declared to be delivered although the grantee be absent, yet if de-

livered to a stranger, without any declaration or other matter to show that it is for the use of the grantee, it is not a sufficient delivery. 2 Min. Inst. p. 732.

It also appears from the proof in this case that when N. C. Leftwich incurred any debt it was paid by his wife (appellee), and therefore there was no conceivable reason why he should not have had this deed recorded and the land it purported to convey transferred to himself and claimed it, or some interest in it, as his own, except for the fact that, as appellee claims, the deed was never delivered to him, and was to be of no force or effect unless she died before he did, in which event he was to have only an undivided one-half interest in the land for his life.

This is not a controversy between creditors of N. C. Leftwich, deceased, and appellee touching the right of the former to subject the land in question to the payment of debts asserted against Leftwich, but a case in which a court of equity is asked by the next of kin and heirs at law of the decedent to take the title of appellee's land from her and give it to them, and that, too, upon proof that is of itself not only unsatisfactory and therefore not conclusive, but is contradicted or discredited throughout by positive evidence, borne out by the circumstances clearly shown to have surrounded the parties to the transaction in question.

The decree appealed from is, in our opinion, not only in accordance with the right and justice of the cause, but is fully justified by the evidence in the record, and, therefore, it is affirmed.

*Affirmed.*