## Wytheville.

## MERCHANTS SUPPLY COMPANY, INC., v. EXECUTORS OF THE ESTATE OF JOHN E. HUGHES.

### June 12, 1924.

1. WITNESSES—*Transaction with Deceased Person—Interested Party—Adverse Party.*—Section 6209 of the Code of 1919 provides that in a suit or action by or against a person incapable of testifying, or by or against his representative, no judgment shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony. An adverse party, within the meaning of this section, is one who is a party to the record, against whom or in whose favor a judgment is sought. An interested party is one, not a party to the record, who is pecuniarily interested in the result of the suit.

2. WITNESSES—*Transaction with Deceased Person—Interested Party—Stockholder in Corporation—Case at Bar.*—In an action by a corporation against executors to enforce a stock subscription by their decedent, a large stockholder in the plaintiff corporation is necessarily an "interested" party whose testimony must be corroborated before any judgment can be founded thereon.

3. STOCK AND STOCKHOLDERS—*Subscription for Stock—Subscription or Conditional Agreement to Subscribe—Case at Bar.*—In an action by a corporation against executors on an alleged subscription for stock by their decedent, a witness, a large stockholder in the corporation, testified that the decedent examined the subscription blank and said he would not sign it but would let the witness know in the morning. The next day decedent wrote the witness that he would be glad to subscribe for $2,500.00 worth of stock after certain things were done by the witness but, "I will not do anything further in the matter until this is done."

   *Held:* That the letter showed at most a conditional agreement to subscribe for the stock.

4. WITNESSES—*Transaction with Deceased Person—Corroboration—Conditional Subscription for Stock—Stockholder as Interested Party.*—In an action by a corporation against executors on an alleged stock subscription by their decedent a letter by the decedent to a large stockholder in the corporation was introduced in evidence. In this letter decedent said that he would be glad to subscribe to a certain amount

of stock after certain things were done by the stockholder to whom the letter was addressed. The stockholder testified that these things were done by him.

*Held*: That even if the letter was a subscription for stock, the plaintiff's case must fail for the reason that the stockholder's testimony, that he had complied with the conditions therein stated, was uncorroborated on material points.

Error to a judgment of the Corporation Court of the city of Danville, in a proceeding by motion for a judgment for money. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Harris & Harvey*, for the plaintiff in error.

*Meade & Meade*, for the defendants in error.

WEST, J., delivered the opinion of the court.

This is an action by Merchants Supply Company, Inc., against the estate of John E. Hughes, deceased, to recover $2,500.00, with interest, on an alleged subscription by Hughes for twenty-five shares of the capital stock of the plaintiff company.

The defendants pleaded the general issue. There was a verdict and judgment for the defendants. To that judgment this writ of error was awarded.

The original notice of motion rested plaintiff's right to recover upon a letter dated May 2, 1919, from John E. Hughes to Julian W. Fretwell, who subsequently organized the company and became its secretary and treasurer, vice-president and general manager. Defendants' demurrer to this notice was sustained and the plaintiff filed an amended notice based on an alleged

oral agreement between Hughes and Fretwell, which it claims was confirmed by the letter of May 2, 1919.

Hughes having become mentally deficient, the suit was first filed against his committee, and at his death was revived in the name of his executors.

The letter of May 2, 1919, *supra,* dated at Danville, Va., reads as follows:

"Mr. Julian W. Fretwell,
        "City.

"Dear Sir:

"This is to confirm to you, that as soon as you get subscribed and paid in $17,500.00 worth of stock you propose to issue to run your new business, and associate with you some good business man, who will take not less than one thousand dollars worth of stock, and you, yourself, take not less than one thousand dollars worth, and the gentleman referred to, to be a good business man and one that I can approve of, I will be glad to subscribe $2,500.00 worth of same, and pay cash for it, but I will not do anything further in the matter until this is done.

                "Yours very truly,
                        "Jno. E. Hughes."
"JEH–GS"

Julian W. Fretwell, the principal witness for the plaintiff, testified that on May 1, 1919, John E. Hughes discussed with him the question of organizing his company, and said: "You put me down for $2,500.00 and then I will see you about the 'balance,' " and that witness replied, "I cannot put you down. I might put you down for $25,000.00. I want your *subscription* to help me in getting other subscribers;" that Hughes said: "All right, I will write you;" and that when he

showed Hughes the subscription list, he looked it over and said he would not sign then, and witness said: "I want your name on here;" that Hughes replied, "I will let you have it in the morning. I will write you in the morning what I will do." Hughes wrote the letter, *supra,* the next day.

Witness further testified that, after receiving the letter of May 2, 1919, he went ahead with the organization of the company; got over $17,500.00 subscribed, and paid in in cash; associated with him, with the consent and approval of Hughes, J. R. Hill, who also took over $1,000.00 worth of stock, and himself took over $1,000.00 in stock; delivered the letter to the company after its organization, and suggested to them to issue $2,500.00 worth of stock in the name of John E. Hughes and attach same to a draft on him at his bank for collection.

The plaintiff in error alleged four assignments of error:

1. The giving of instruction "A" for the defendants;

2. The failure to give instruction No. 1, as offered, and giving it as amended;

3. The refusal to give instruction No. 2, as asked, and giving it as amended; and

4. The failure to set aside the verdict and enter judgment for the plaintiff.

In our view, we need discuss only assignments of error one and four.

[1, 2] Instruction "A" reads as follows: "The court instructs the jury, that John E. Hughes, one of the parties to the contract sued on, being dead, they cannot render a verdict for the plaintiff in this action on the testimony of Julian Fretwell, unless his testimony is corroborated by other competent evidence."

The statute, Code section 6209, provides that "in any action or suit by or against a person who from any

cause is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony  *  *."

An adverse party, within the meaning of this section, is one who is a party to the record, against whom or in whose favor a judgment is sought. An interested party is one, not a party to the record, who is pecuniarily interested in the result of the suit.

Fretwell, being a large stockholder in the plaintiff company, is necessarily an "interested" party whose testimony must be corroborated before any judgment can be founded thereon.

In *Atlantic Coast Realty Co.* v. *Robertson's Ex'r*, 135. Va. 259, 116 S. E. 480, this court, speaking through Judge Prentis, said: "There can be little doubt that a stockholder in a corporation is one who has a pecuniary interest in the result, when such corporation is a party to the litigation in which judgment is sought by or against it. The cases are collected in a note to *Peterson* v. *Merchants' Elevator Co.*, 111 Minn. 105, 126 N. W. 534, 27 L. R. A. (N. S.) 819, 137 Am. St. Rep. 537."

It is manifest that instruction "A" correctly states the law as applicable to the facts in the instant case.

[3] The remaining question to be decided is this: Is Fretwell's testimony sufficiently corroborated, and if so, has the plaintiff made out a case which entitled it to a judgment in its favor?

A painstaking examination of Fretwell's testimony fails to disclose that Hughes actually *subscribed* to the capital stock of the company. He examined the subscription blank and said he would not sign then, but would let Fretwell know in the morning. "I will write

you what I will do." When we look to his letter, May 2, 1919, we find no proof of a *subscription* for stock. Hughes simply says he "will be glad to subscribe $2,500.00 worth" of stock, *after* certain things are done by Fretwell, but, "I will not do anything further in the matter until this is done." At most, the letter shows a conditional agreement *to subscribe* for stock.

[4] But, if the letter be a subscription for stock, the plaintiff's case must fail for the reason that Fretwell's testimony, that he has complied with *all* the conditions therein stated, is uncorroborated on material points.

If the plaintiff is entitled to any redress, as to which we express no opinion, it is an action for damages for Hughes' failure to subscribe to the stock after Fretwell had complied with all the conditions placed upon him by the letter of May 2, 1919.

Whether the court erred as to the other two instructions is immaterial, since under the evidence no proper verdict or judgment could have been rendered for the plaintiff.

*Affirmed.*