## Staunton.

J. L. RATLIFF, ADMINISTRATRIX v. JOHN JEWELL AND ESTHER JEWELL.

September 19, 1929.

Absent, West, J.

316

The opinion states the case.

*A. A. Skeen* and *H. Claude Pobst*, for the plaintiff in error.

*Williams & Combs*, for the defendants in error.

HOLT, J., delivered the opinion of the court.

This is an attachment brought by Mrs. J. L. Ratliff, administratrix of her husband, J. L. Ratliff, deceased, against John Jewell and his wife, Esther Jewell, to enforce the collection of two notes executed by these defendants, both of date November 3, 1926; one for

$153.00, due April 3, 1927, and one for $150.00, due November 3, 1927. In each a ten per cent attorney's fee is provided for.

A plea of set-off was interposed. That plea, among other things, states that:

"The said defendants, by their attorneys, come and say that before and at the time of the commencement of this action and of the filing of this plea, the said plaintiff's intestate was and still is indebted to the said defendant, John Jewell, in a large sum of money, to-wit, the sum of $——, for divers timber, labor, board, lumber, locust posts, etc., more particularly itemized as follows:

| | |
|---|---:|
| "219,046 feet of lumber at $11.00 per thousand | $2,409.50 |
| "300 locust posts at 15 cents | 45.00 |
| "1,400 feet of 2 x 4 for tram road at $11.00 per thousand | 20.53 |
| "For 143 hours of labor at 50 cents per hour | 71.50 |
| "Board 137 days for J. L. Ratliff and his laborers at $1.00 per day | 137.00 |
| "Total | $2,683.53 |
| "Credit by amount paid J. L. Ratliff, May 20, 1920 | $50.00 |
| "Credit by amount paid in June, 1920 | 100.00 |
| "Credit by amount paid in July, 1920 | 200.00 |
| "Credit by old store account which John Jewell owed to J. L. Ratliff | 404.00 |
| "Credit by store account of John Jewell paid to Curb Ratliff | 890.00 |
| "Credit by amount paid John Jewell's work hands by J. L. Ratliff | 401.70 |
| "Total credits | $2,045.70 |
| "Balance due by J. L. Ratliff's estate to John Jewell | 637.83 |

"Wherefore, the defendant, John Jewell, prays judgment if he ought not to recover, according to the statute for such case made and provided, of and from the plaintiff, the sum of $637.83, which said amount is the amount that the defendant is entitled to recover of and from the plaintiff and which amount is $334.83 in excess of the amount that the plaintiff is entitled to recover of and from the said defendant.

"And this the said defendant is ready to verify.

"WILLIAM & COMBS, *p. q.*"

There was a jury trial. This verdict was returned:

"We the jury find in favor of the defendant, John Jewell, $637.83 less, the amount of two notes of the total amount of $303.00.

"T. R. HIBBITTS, Foreman."

It was confirmed by the trial court over plaintiff's protest.

Plaintiff's decedent died in February, 1926. He ran a country store. At the time of his death John Jewell owed an account there of $303.00. He was in straitened circumstances and had gone to West Virginia to work on a road force. His credit had been cut down by Mr. Ratliff, and after Mr. Ratliff's death it was cut off by his wife. Jewell then bought for cash only and in a small way, as did his wife.

What was the situation when these notes were given?

The administratrix was pressing for settlement and had placed the claim in the hands of a constable for collection. Mr. Jewell said the notes were given because Mrs. Ratliff told him that she had been advised by her lawyer to so close all open accounts, but they

were not given until the collection was about to be enforced and were manifestly not given merely to close an account, for they are the joint obligations of himself and of his wife.

To sum up the situation: Mr. Jewell's credit was gone; he was working as a day laborer and gave these notes jointly with his wife when legal proceedings were threatened.

During all of this time he says that there was due to him from this importunate and solvent creditor, $637.83, for work etc., done five or six years before Mr. Ratliff's death, although he had taken no steps to assert his claim until two years later and then not until his property had been attached and he was threatened with a judgment, this while he had held for three years the memorandum now relied upon.

To support his claim Jewell himself has testified. The substance of his statement is that in 1920 he sold to Ratliff a boundary of timber which he was to cut and log to Ratliff's saw-mill. The price to be paid was $11.00 per thousand feet but he was not to be paid until the lumber had been sawed, measured and sold, and until a settlement between them had been reached. The sawing was done in 1920-21. Nothing in the nature of a settlement was had until 1925, when he and Ratliff met by chance in the road. He was then told that all of the timber had finally been sold and that it amounted to 219,046 feet. Witness who had theretofore made no memorandum of this credit set the item down in a book and read it to the jury at the trial. In this book he had entered the item of locust posts, tram road timber, the hours he had worked, the number of days he had boarded decedent and his crew, together with credits for payments made.

Mrs. Jewell testified to practically the same state of

facts with this exception: She made no mention of the account book.

It is plain that, under the provisions of section 6209 of the Code, Mr. Jewell's testimony must be corroborated. That section declares that in an action by or against one who is incapable of testifying or by or against his executor, administrator, etc.:

"No judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter at issue, may be received as evidence."

This, it is said, does not apply to Mrs. Jewell for the reason that the plea of set-off is in substance an independent action brought here for convenience; that she is not a party and in it no judgment for her can be entered. In short the claim is that she is neither an "adverse" nor "interested" party within the purview of the statute.

Mrs. Jewell testified that she had never received any pay for board. The inference is that this sum was due to her, which would of itself indicate an interest but it is said that was a mere inadvertence and that the entire account, as shown by the itemized statements copied into the plea, was due to Mr. Jewell. If we accept this as true, the fact remains that the attachment is on a joint debt of Mr. and Mrs. Jewell and that this debt is cancelled and satisfied by the judgment entered in the court below. Her interest in the results is plainly manifest and it is not necessary that the judgment as entered be in terms in her favor.

In *A. C. R. Co.* v. *Robertson's Ex'r.* 135 Va. 247, 116 S. E. 476, 479, the purpose of the action was to

recover compensation which the plaintiff claimed because of the breach of an alleged parol contract giving it the exclusive agency to sell certain real estate. The defendant's decedent sold this property to another at a profit and denied the existence of the alleged contract. Mr. Burke was a stockholder in the plaintiff company but had sold his stock before he testified.

The trial court gave this instruction: "If the jury believe from the evidence that the witness, W. E. Burke, before he testified at the present trial of this case, was a stockholder in the Atlantic Coast Realty Company, and had sold his stock to other parties who had given their negotiable notes in payment for his interest therein; and that the said stock has been transferred on the books of the company to others than the said W. E. Burke; and that said sale was in good faith and coupled with no agreement for the subsequent resale of the said stock to the said Burke, then the said Burke was not an interested witness at the time he testified, although you may believe from the evidence that, under advice of counsel, he parted with the stock for the purpose of doing away with any limitation that might exist as to his testimony under the laws of this State; but the jury, in passing upon the weight of credence to be given his testimony, may consider the fact that he was a stockholder and had disposed of his stock, shortly before he was examined as a witness. He would have been a competent witness without getting rid of his stock; but, had he not disposed of his stock he would have been an interested party, and a judgment could not be rendered upon his testimony unless corroborated." The last clause may well be regarded as surplusage because it was proven that Burke had disposed of his stock before the trial and it was so held.

This court, speaking through Judge Prentis, made these comments. Their importance justifies their restatement at length. "The true construction of section 6209 is difficult. So far as applicable to the facts of this case it is discussed in *Robertson's Ex'r. v. Atlantic Coast Realty Co.*, 129 Va. 499, 106 S. E. 521. Supplementing that discussion, and because it is probable that the question will again arise, we have upon mature consideration reached conclusions intimated but not emphasized there.

"Adjudged cases shed little light upon the question because at last its determination depends upon the construction of the language of the Virginia statute. This precise language used in this connection does not appear in any other statute so far as we are informed.

"We should first rid our minds of all of the cases which discuss the character of interest which disqualifies a witness, for under the Virginia statute the interest of a witness is no longer a disqualification. The object of the statute is twofold—that is, to provide first that there shall be no judgment in favor of an adverse or interested party founded on his uncorroborated testimony; and second, in case an adverse party testifies, then to admit as evidence the memoranda and declarations of the opposite party incapable of testifying. It is significant that in the clause of the statute which requires corroboration the descriptive language is 'adverse or interested party,' whereas in that which permits the admission as evidence of the memoranda and declarations of the person then incapable of testifying who or whose representative is a party to the suit, the language used is 'adverse party'; so that if an adverse party—that is, a party to the record, against whom, or in whose favor, a judgment is sought testifies—then such memoranda and declara-

tions of his adversary in the litigation if relevant are admissible. On the other hand when referring to the corroboration required, this is not limited to the adverse party, but includes both the adverse party and the interested party. This language must have been chosen designedly. If we hold that the words 'adverse' or 'interested' party, whose testimony requires corroboration, are synonymous and refer only to the parties of the suit, then the word 'interested' in that connection is clearly superfluous. If then we are to attach any effective meaning to this word (interested) we must hold that one who has a pecuniary interest in the recovery, although not a party to the record, is a witness requiring corroboration."

"In an action by a corporation against executors to enforce a stock subscription by their decedent, a large stockholder in the plaintiff corporation is necessarily an 'interested' party whose testimony must be corroborated before any judgment can be founded thereon." *Merchants' Supply* v. *Hughes' Ex'rs.* 139 Va. 212, Syllabus Note No. 2, 123 S. E. 355.

In these cases the witnesses were not parties to the litigation and no judgment could have been entered against them there. Here, if we treat the set-off as an independent action, Mrs. Jewell is not a party but she has a direct substantial pecuniary interest in the result, unless the set-off be sustained, judgment must go against her.

"A disqualifying interest may result from the witness being liable for the debt therefor, liable to reimburse the party for whom his testimony is offered in case the decision is against such party, or subject to liability from which the success of the party in whose favor he would testify would relieve him, an interest in the property concerned in the litigation which may

be beneficial or adversely affected by the result of the suit, a beneficial interest in the fund sought to be recovered, or a liability for costs of the action." 40 Cyc. page 2282.

 Mrs. Jewell is an interested witness. Her husband is also interested and was a party to the original transaction. Both must be corroborated and they cannot corroborate each other. That support must come from some outside source.

Its character and amount must measurably be gauged by the facts sought to be established. A narrative which runs counter to common experience should be buttressed to an extent not necessary were it fair upon its face, and no amount of testimony can sufficiently corroborate evidence of facts inherently improbable, which is but another way of saying that the same process of reasoning should hold in courts which governs us out of them.

 No hard and fast rule can define satisfactorily what is sufficient corroboration. The witness need not be corroborated on all material points, but must be supported on some essential fact whose establishment is necessary to sustain the judgment. If the testimony to be corroborated is inconsistent and contradictory, then to speak of corroboration at all would be a solecism. *Merchants' Supply Co.* v. *Hughes, supra; Burton* v. *Manson,* 142 Va. 500, 129 S. E. 356; *Davies* v. *Silvey,* 148 Va. 132, 138 S. E. 513.

"How much of this character of evidence is necessary to constitute corroboration is dependent on the facts and circumstances of the particular case, and while no hard and fast rule can be laid down on the subject, there must be sufficient to justify the belief that the witness sought to be corroborated has testified to the truth." *Varners' Ex'rs* v. *White,* 149 Va. 185, 140 S. E. 128, 130.

■ Plaintiff contends that Mr. Jewell's evidence is so contradictory that it cannot be corroborated at all in that he claims his account was not to become due until a final settlement had been made and that no such settlement was made earlier than 1925. The set-off upon its face shows that there has been paid thereon $2,045.70, which payments Jewell said were made while the work was in progress, or in 1920–21. From this it appears that Ratliff, who was so careful in postponing the day of settlement, paid the great bulk of this indebtedness five years before it was due. This is hardly contradictory—a man may pay his debts before they are due—but it does go directly to the credibility of this testimony.

It is important to remember just what must be corroborated. The sale of lumber and the logging of the mill is plainly established and indeed is not in dispute. It is the good faith of an indebtedness arising out of a transaction and set up seven or eight years after it had occurred which is questioned.

■ In support of the demand a memorandum book is offered and the testimony of witnesses.

Shop books, books of account, bank books, etc., are competent as evidence and frequently useful, but to be admissible or to have any value as such they must ordinarily appear to have been made in the regular course of business and as a part of the party's system of keeping his accounts. Experience has demonstrated that their admission must be hedged about with certain safeguards. *Wells' Adm'r. v. Ayers*, 84 Va. 341, 15 S. E. 21; *Barley v. Byrd*, 95 Va. 316, 28 S. E. 329; *Hardy v. Commonwealth*, 110 Va. 910, 67 S. E. 522; *Allen v. Commonwealth*, 122 Va. 834, 94 S. E. 783; *Buchanan v. Higginbotham*, 123 Va. 662, 97 S. E. 340.

Before entries of this kind can have any probative value, certain prerequisites must appear.

"The first general requirement is that the entry must have been made in the regular course of business. The judicial phrasings of this requirement vary in terms.

"The entry must have been, therefore, in the way of business. This may be defined to mean a course of transactions performed in one's habitual relations with others and as a natural part of one's mode of obtaining a livelihood." Wigmore on Evidence, section 1523.

"In the first place, the entry must have been a part of a regular series of entries—not, for example, a casual sale of an article not regularly dealt in, or a casual entry at the beginning of a blank book or at the end of a book already finished and laid aside. Again, the entry is not usable if it shows that it embraces in one item a number of separate transactions, or is in any other way so loosely made that regularity of entry cannot be predicated." Wigmore on Evidence, section 1549.

"It is a distinct requisite that the first entry made, regardless of whether permanent or a mere memorandum, be made at or about the time of the transaction noted. Entires to be admissible, may not be recitals of past transactions. They must be accounts or notations of transactions as they occur. Accordingly, it is very clear that shop books may not be received as evidence where the entries therein are not made at or about the time of the transaction. If not so made, entries are not worthy of trust, being mere independent declarations of a party in his own favor." Jones' Commentaries on Evidence (2nd ed.), section 1794.

"It is necessary that the entries be contemporaneous, or about the time of the transaction. * * * Lump charges are a fatal objection to the admissibility of the

books, for the rule is that the entries must be in such shape, that they may be presumed to be the daily minutes of the party's business and transactions." Elliott on Evidence, section 461.

"Freshness of entering is essential: The entries must be made as soon after the transaction as is consistent with the due course of business. * * * Each item must be severally entered when this is comformable to the nature of the transaction." Wharton on Evidence, section 683.

Greenleaf on Evidence, 16th edition, section 120c; *Martufi* v. *Daniels*, 99 W. Va. 673, 129 S. E. 709; *Nicholls* v. *Webb*, 8 Wheat. 326, 5 L. Ed. 628.

█ The major item relied upon to sustain a recovery is that of 219,046 feet of lumber for which $2,409.50 is charged. This entry is a lump sum made four or five years after the work was done.

It was competent for the witness to refresh his recollection by reference to this memoranda but that gives no weight to the memoranda themselves. *N. & W. Ry. Co.* v. *Nottingham*, 139 Va. 748, 124 S. E. 398. They must be governed by the test noted, to permit a recovery on the strength of a disconnected entry written in a book or elsewhere would be to break down every safeguard, and to wipe away the protection given by our statute, sometimes sorely needed.

█ Reliance is also placed upon the evidence of Jim White, J. A. Smith, March Vincent, and Mrs. Smith.

Jim White said: "He was one ot the work hands for J. L. Ratliff while this lumber was being sawed, and that he was a sawer a part of the time on this job and sawed a part of the lumber; that the logs were not scaled or measured as they were sawed in the woods and the amount of feet that was contained was not

measured before they were sawed and was not measured as the sawing was done, but that the lumber as it was sawed was stacked up there on the yard and that he did not know when it was sold, or to whom, or when it was measured."

March Vincent said: "That he being employed by J. L. Ratliff, helped haul away the lumber from the yard where it was stacked at the top of the ridge. * * * that he hauled the balance of the lumber to the station at Jewell Ridge * * * and that the lumber was not measured as he hauled it from the stackyard."

J. S. Smith said: "About November or December, 1922, he, being employed by J. L. Ratliff, helped haul away the lumber from the yard where it was stacked at the top of the ridge; that he hauled the balance of the lumber from said yard to the home of J. L. Ratliff; that before that time he had hauled some of the lumber to the station at Jewell Ridge; that he didn't know what had become of it but guessed it had been shipped away; that he went back there occasionally but never saw any of it; that he understood that this lumber came from the John Jewell sawmill job but didn't know; that after this hauling was completed in November or December, 1922, no lumber at all was left on the yards at the top of the ridge."

This is Mrs. Smith's evidence: She states that "a few nights before the death of J. L. Ratliff, who died after a very short sickness, she was at his home and he was talking about several people who owed him money, and in that conversation he said that John Jewell always stayed in debt to him and that he never could get a settlement out of him, and never could get him out of his debt."

"On cross examination, by counsel for defendant, as

to whether Ratliff said there was a settlement to be made between him and John Jewell, this witness stated that Ratliff said he could not get John Jewell to settle with him."

The evidence amounts to no more than this: These witnesses did not see the lumber measured on the yard and do not know what became of it.

If this be corroboration at all it is insufficient to sustain a recovery. The contract as stated by Jewell is not an ordinary one and the circumstances are against him. In its consideration these things heretofore stated are to be remembered. Two notes were executed, due six and twelve months from date. On them his wife appears as co-maker. His credit had been cut off. He was working as a day laborer in another State. His property was attached and then for the first time did he undertake to assert his claim. That was seven years after the work was done and two years after Ratliff's death. He was paid over $2,000.00 while the work was in progress and nothing in the intervening years. During all of this time Ratliff was solvent, and he was in need.

In view of the conclusions which we have reached it is not necess ry to consider the plea of the statute of limitations.

The plaintiff is entitled to a judgment of $303.00 with interest, plus an attorney's fee of ten per cent. The attachment must be sustained. The judgment on the set-off in favor of Jewell is reversed, and it is so ordered.

*Reversed.*