# Richmond

## J. T. CRUMP v. MARTHA E. GILLIAM AND OTHERS.

May 1, 1950.

Record No. 3592.

Present, All the Justices.

The opinion states the case.

*J. Thomas Hewin, Sr.,* for the appellant.

*Earl L. Valentine* and *Robert C. Lyne,* for the appellees.

MILLER, J., delivered the opinion of the court.

Appellant, J. T. Crump, instituted this suit in equity against the heirs-at-law of his deceased wife. The bill of complaint alleges that, by a deed dated December 15, 1937, his wife conveyed to him certain real estate in the city of Richmond; and that although the deed was in his possession, it was never acknowledged by her, and, therefore, he is unable to record it. The prayer of the bill is that the court will confirm the deed or appoint a special commissioner to convey the real estate to him, and for general relief.

After hearing the testimony *ore tenus,* the court below denied the relief sought on the ground that appellant had failed to establish that the deed in question had, in fact, been delivered by the grantor to him. The decree complained of, while not a final one, adjudicates the principles of the cause and all material questions in controversy, and is therefore appealable.

The opinion of the trial court (which is a part of the record) states that, "The question is whether or not there was in her lifetime a delivery of this deed". This, together with the allegations and prayer of the bill, discloses that the only issue presented was whether or not the deed was ever delivered to appellant by his wife. That such is the precise and sole question for decision is made certain by this recital in appellant's petition: "The one judicial question before the court in this case is: Was there a delivery of the deed by Mary Crump to her husband, Joseph T. Crump?"

The deed is signed and sealed by Mary E. Crump, but unacknowledged. It contains recitals to the effect that

appellant bought and paid for the land and improvements; caused the real estate to be conveyed to her as owner, and the deed to be recorded in her name. A further recital therein is that it now appears "more convenient to deed said lot and buildings thereon" to him.

The evidence and inferences drawn therefrom by the chancellor are set out in his opinion. It is stipulated by counsel that his recital of the evidence is correct. So much of the opinion as contains the evidence and factual inferences drawn therefrom follows:

"About 1925 the plaintiff determined to sell the home in which he had lived and build a new home. He accomplished this and the new home is known at 620 North 31st Street. The plaintiff is a colored preacher and in order that he might avoid importuning by his parishioners to go on their bonds from time to time determined to give the new home to his wife in order, as he says, that he might tell the parishioners truthfully in response to their requests that he owned no property in his own name. Accordingly the property Number 620 North 31st Street was put in the name of Mary E. Crump and there is no question that this was intended to be and was in fact a gift and the property was in fact hers in title and beneficial ownership, the husband, who had paid for it, having thus made a completed gift to the wife. The parties continued to live in this property until the wife's death on September 6, 1948.

"The plaintiff testified that without previous discussion of any such transaction his wife came in one day and handed him this very paper which he glanced at and handed back to her suggesting that she place it with their other important papers. He says his wife told him on that occasion that if anything happened to her he would have no trouble but would be entitled to the property by virtue of this paper. There does not appear to have been any subsequent discussion of the transaction or even any allusion to the paper from that day in 1937 until the day of Mary E. Crump's death. Shortly after his wife's death the plaintiff

took the paper which he says he thought was a will to the real estate firm of Pollard and Bagby and was informed that it was not a will but was an unacknowledged deed and that they could not help him probate it as a will or record it as a deed, and told him to consult a lawyer.

"Defendants put three witnesses on the stand who testified as follows: Betty Gilliam Wilkins, who is a married daughter of the defendant Martha E. Gilliam, says she and her mother went to the home, 620 North 31st Street on September 14, 1948, eight days after the death of her Aunt Mary, for the purpose of cleaning up her room. While thus engaged Betty found in the upper right-hand drawer of her Aunt Mary's bureau with an insurance policy and some receipts, and perhaps other papers as well as personal belongings, the instrument dated December 15, 1937. She first found the insurance policy and delivered it at once to J. T. Crump, who was passing in the corridor going to or from his room, which was the front room. She then came back in her Aunt Mary's room and called the attention of her mother, who was in the room at the same time, to the deed. The mother looked at the deed and said: 'It's not ours, put it back.' Having finished their task they left the house with certain articles to be laundered and about three days later returned with them. They asked J. T. Crump if he had seen the paper in the dresser drawer; he said: 'No', so Betty got the paper and showed it to him. She says he said: 'Oh, that's about the property on 30th Street' and Martha Gilliam said 'No'. He looked at it again and said: 'Oh, that's about the N Street property', and Martha Gilliam said: 'No, that's about this property right here', to which his only comment was 'Oh'. Betty says her mother asked permission to make a copy of this paper and J. T. Crump permitted her to do so, leaving the original with him.

"The testimony of Martha E. Gilliam confirms in detail the testimony of her daughter Betty. She also said that her sister Mary always spoke of the property as hers, adding: 'Reverend Crump doesn't own a thing', and that statements

of this character from time to time were made during the last ten years of her life. She also testified that her sister Mary was a well educated woman and taught in one of the elementary schools in Richmond; she also said that her sister was accustomed sometimes to prepare papers such as wills for other people; also that her sister's health remained good up until her death.

"This property was in 1925 and for twelve years thereafter owned in fee simple by Mary E. Crump. The fact that it became hers by gift is altogether immaterial. It remained hers until her death, unless she divested herself of it by a completed gift in her lifetime. The only divesting referred to is the unacknowledged deed found in her dresser drawer after her death. * * *.

"In the case now before the court there is only the bare and uncorroborated testimony of the party most interested, namely, the grantee, that on an occasion some eleven years prior to her death his wife handed the deed to him and that he handed it back to her for safekeeping. Other witnesses, also interested it is true, give evidence that tends strongly to discredit this secret and private transaction between husband and wife. Even if it were conceded that a delivery of this character could be shown by the uncorroborated testimony of the survivor of the transaction, he being the interested donee, it is clear in my opinion that the proof of the essential of delivery is not shown by this record by a preponderance of the evidence and that the plaintiff has not sustained the burden of proof of this essential element of a gift *inter vivos*."

The evidence having been heard *ore tenus*, the factual finding of the chancellor has the force and effect of a jury's verdict. If reasonable men might differ as to the factual conclusion to be drawn from the evidence, or if the conclusion is dependent upon the weight to be justly given the testimony, his finding of fact may not be disturbed by this court. It settles the conflicts in the testimony and all just and reasonable inferences drawn by him from the facts

proved are binding upon us. *Lowdon* v. *Lowdon*, 183 Va. 78, 31 S. E. (2d) 271, and *Masche* v. *Nichols*, 188 Va. 857, 51 S. E. (2d) 144.

Until delivery, the deed was wholly ineffectual. The giving of the instrument by the grantor and the receipt thereof by the grantee with mutual intent to pass title and ownership from the former to the latter is absolutely necessary to impart to it life and vitality. *Leftwich* v. *Early*, 115 Va. 323, 79 S. E. 384.

The only evidence of any moment that tends to establish delivery is that of appellant. It is that decedent handed him the deed on one occasion and he handed it back to her and suggested that she put it with their other important papers. He further says that she at that time told him "that if anything happened to her he would have no trouble but would be entitled to the property by virtue of this paper." Emanating as the testimony does from appellant, who is an adverse and interested party, and his wife, who was the other party to the transaction, being dead, it is our opinion that even though his testimony be uncontradicted, standing alone, it could not under the provisions of section 6209, Code, 1942 (sec. 8-286, Code, 1950), sustain a decree in his favor.

In the record, there is no other evidence that is really corroborative of delivery. The recitals in the deed lend color to the situation and tend to render it probable that his wife might have intended to deed the property to him, but they do not furnish corroboration of the factual and actual delivery claimed. At best, they supply a motive for a gift to him but do not help to prove the immediate transfer of possession or control of the deed, actual or constructive, which is necessary to impart to it life. The character and sufficiency of the corroboration should be gauged and appraised by the fact sought to be proved. Just what is necessary to be corroborated (*i. e.*, delivery) must not be overlooked. *Ratliff* v. *Jewell*, 153 Va. 315, 149 S. E. 409, 67 A. L. R. 1541. Here, corroboration is needed upon the sole

fact of delivery. To hold that the recitals in the instrument furnish the necessary corroboration on that one and only vital issue approaches too near to allowing the deed to deliver itself. *Ratliff* v. *Jewell, supra.*

But be that as it may, even if these recitals be treated as corroborative of appellant's testimony that a delivery was made, other circumstances set out in the chancellor's statement of the evidence are distinctly contradictory of the negative delivery and justify his ultimate finding of fact.

It would serve no good purpose to recite again at length the evidence. Yet the brief and undisputed facts are that decedent during her lifetime claimed the property as hers; the deed was, after its preparation, retained by her for many years; immediately after her death it was found in her bureau drawer along with other papers belonging to her; appellant did not know of or had forgotten its existence, and when finally convinced it had reference to 620 North 21st Street, he did not know what it was but thought it a will. Each and all of these are persuasive circumstances, and taken together negative an intention on the part of the grantor to relinquish possession or control of the instrument, and refute the existence of mutual intent to then pass title and ownership.

These circumstances, coupled with the fact that the deed had never been acknowledged, which is not without significance and was entitled to be considered by the chancellor in evaluating all of the evidence (*Mumpower* v. *Castle*, 128 Va. 1, 104 S. E. 706), justified his ultimate conclusion that there never had been a delivery.

Under the proved facts and the just inferences that the chancellor was entitled to and did draw therefrom, it appears that an affirmance of his decree is required.

*Affirmed.*

SPRATLEY, J., dissenting.

I agree with the majority that the sole question for decision in this case is whether or not the deed dated Decem-

ber 15, 1937, was ever delivered by Mary E. Crump to her husband J. T. Crump. I do not question the legal principles stated, but I question their applicability to the facts and the realities of the situation.

In the view I take of the case, the evidence and all proper and reasonable inferences therefrom point unerringly, and without a single contradiction, to the fact that there was a complete delivery of the deed. The infirmities of the conclusion of the majority lie in their failure to attach proper importance to the recitals of the deed, the circumstances of its possession, and their effort to give undue weight to the testimony of the relatives of the wife about the circumstances surrounding their finding of the deed.

A consideration of all of the evidence and circumstances will, I think, disclose the weakness of the majority opinion.

Mrs. Crump was a well educated colored woman and taught in one of the elementary schools in Richmond. She sometimes prepared papers, such as wills, for her friends. It is alleged that she drafted the deed in question here. Her husband was ignorant of business and legal matters, and was unable to tell a deed from a will. Living together in complete harmony, they looked upon themselves as one in unity of purpose and possession.

The undisputed testimony of Crump is that his wife came to him one day and handed him the deed, which he glanced at and handed back to her, suggesting that she place it with their other important papers. His wife then told him that if anything happened to her, he "would have no trouble, but would be entitled to the property by virtue of this paper."

The deed contained short recitals which speak louder than volumes. They inform us of the motives and intent of the grantee in the most positive, direct and express words. They are preserved by the written words of the grantee in language that permits of no doubt and cause the majority to concede that their conclusion makes this case one of hardship. They indelibly impress the case with the material

fact that she intended her act to be the fulfillment of what she properly regarded her obligation to her husband.

These recitals, in the language of Mrs. Crump, are sufficiently important to be set out in detail. They are:

"Whereas the Rev. J. T. Crump, party of the second part did build and buy all that certain lot of land with improvements thereon, known as 620 N. 31st Street, Richmond, Va., and

"Whereas the said Rev. J. T. Crump, did, of his own accord, cause the said lot and buildings thereon to be recorded in the name of Mary E. Crump, party of the first part as owner, and

"Whereas it now appears to Mary E. Crump, party of the first part, to be more convenient to deed the said lot and buildings thereon to the said Rev. J. T. Crump.

"NOW THEREFORE, in consideration of the premises and the sum of One Dollar, and other considerations, the dollar being cash in hand

"The said party, Mary E. Crump, of the first part doth grant with general Warranty of Title unto Rev. J. T. Crump, party of the second part all the following property; * * * "

Eleven years after the deed was written, upon the death of Mrs. Crump, it was found by one of her relatives in a drawer of her bureau with an insurance policy and some receipts, the place where she and her husband kept their important papers. It had apparently remained there from the date of its execution and delivery to her husband. Had it been removed therefrom by her husband it is quite clear no question of its delivery would ever have been raised.

Crump, shocked and grieved by the death of his faithful companion of many years, gave no immediate thought to his business affairs upon her death. He made no examination of her papers or search to determine whether she had left a will. Eight days after her death, with his mental faculties vague and confused by sorrow and grief, he was confronted by the relatives and heirs-at-law of his wife with their

discovery of the deed. He did not then read the paper presented to him, for he thought it referred to another piece of property. Nothing said by the witnesses for the defendants contradicted his testimony that the deed had been delivered to him, or negatived the attendant circumstances of the claimed delivery. He did not deem it necessary, nor was it necessary, for him to make an explanation to the relatives of his wife. Under the attendant circumstances it could hardly be expected that he would have identified the paper delivered to him eleven years before. Without thought of controversy, he complied with their suggestion that they be permitted to make a copy of the instrument.

In *Leftwich* v. *Early*, 115 Va. 323, 328, 79 S. E. 384, quoting from *Martin* v. *Flaharty*, 13 Mont. 96, 32 P. 287, 40 Am. St. Rep. 415, 19 L. R. A. 242, we said:

" 'The question of the delivery of a deed is one of intention, and the delivery is complete when there is an intention manifested on the part of the grantor to make the instrument his deed.' "

In *Payne* v. *Payne*, 128 Va. 33, 104 S. E. 712, Prentis, J., in a comprehensive review of numerous cases dealing with various phases of the subject, said there is a delivery of a deed where the intention of the grantor to deliver is effectuated by word or acts, and this is a question of fact to be gathered from all of the circumstances of the case. This was stated to be particularly true if the conveyance is one of *voluntary settlement*. Nor, as between the grantor and the grantee, would the deed be invalid for want of delivery merely because it remained in the grantor's possession.

As to the sufficiency of the delivery of a deed, it is said in 16 Am. Jur., Deeds, section 121: "All that is requisite is that, by his acts and words, the party manifests an intention to deliver his deed. The intention is to be gathered from all the acts and declarations of the grantor. As has been many times said, a deed may be delivered by words without acts, or by acts without words, or by both words and acts."

See also 26 C. J. S., Deeds, section 42, *et seq.*

In *Garrett v. Andis*, 159 Va. 150, 157, 165 S. E. 657, Holt, J., said:

"Intent governs delivery. Of course one would not afterwards be heard to say that he did not intend a delivery unequivocally made, but intent is of the utmost importance in doubtful cases, and it is then that relevant evidence of facts and circumstances leading up to the delivery becomes of importance."

It cannot here be said that possession was retained by the grantor. The Crumps were simple people. They kept their valued papers in the wife's bureau. Because of her greater experience in business matters, it was natural for her to preserve the records and papers of her family. That it was placed in her bureau by common consent for safekeeping is without contradiction. The fact that other papers of importance were there found affords affirmative support.

In *Garrett v. Andis, supra,* at page 158, we quoted with approval:

" 'In cases of voluntary settlements, courts have gone great lengths in sustaining the validity of deeds, without affirmative proof of any delivery, and the earlier cases hold that a voluntary settlement, fairly made, is binding in equity, unless there is clear and decisive proof that the grantor never parted or intended to part with possession of the deed, and that if he retains it, there must be other facts to show that it was not intended to be absolute.' *Wallace v. Berdell*, 97 N. Y. 13, 22."

We come next to the law of corroboration. Code of 1950, Title 8, sec. 286.

In *Martin v. Martin*, 166 Va. 109, 116, 184 S. E. 220, we held that corroboration "need not rest in the testimony of witnesses but may be furnished by surrounding circumstances adequately established," citing a number of Virginia cases and also *Rogers v. Rogers*, 89 N. J. Eq. 1, 104 A. 32.

The surrounding circumstances herein recited seem to me to adequately establish delivery. To begin with we have a voluntary settlement between a man and his faithful and

devoted wife, in accord with the dictates of good conscience. In addition to the positive testimony of delivery of the deed, the circumstances out of which the transaction grew afford further support.

Mrs. Crump did what was expected of a dutiful wife. Her execution and delivery of the deed was in the form and manner deemed more convenient for her husband, in view of the purposes admitted. The preservation of the deed in the place where the important papers of the couple were kept was consistent with its safekeeping in the manner described by Crump. The fact that Mrs. Crump preserved the deed for eleven years and did not destroy it strongly indicates that she intended it to be effective. Her reason for not acknowledging it indicates, in conformity with the desire it not be known that Crump owned the property, that she did not wish the officer taking the acknowledgment to learn of the conveyance. Her intention was so clear in the recitals of the deed, and her acts were so consistent with the dominant purpose of the husband to conceal knowledge of his ownership of any property, that to ignore her intention and acts and defeat her purpose would be to discard equity and justice by an overly strained adherence to a conventional formula, regardless of the peculiar circumstances surrounding the transaction.

The effect of an affirmance of the decree appealed from not only deprives the appellant of his life savings invested in the property; but deprives his own heirs of any inheritance they might expect. It would have been strange conduct, indeed, on the part of the wife to have gone to the trouble of writing the deed, inserting its peculiar recitals, executing it, and preserving it for eleven years, without intending that such steps be considered legally effective when her husband sought to claim its benefits.

I repeat that had the heirs-at-law of Mrs. Crump not found the deed, no question of its delivery to the husband would have arisen. No reasonable inference can be drawn from the testimony of the witnesses for the defendants

which conflicts with the facts and circumstances supporting the claim of Crump. His conduct is readily explainable in view of the situation in which he found himself. Only suspicion supports the theory of the defendants, a suspicion likely to be engendered by the hope of gain. Opposed to this are facts and circumstances, all upholding the position of the plaintiff who asks only that he be allowed that which, all must agree, is his just due.

Equity is the synonym of natural right and justice. Its principles are grounded in the precepts of the conscience, not in any sanction of positive law. It is in this spirit that I believe the evidence in this case should be considered. In such a consideration, I find no evidence or reasonable inferences which support the conclusion of the trial court. On the other hand, the facts, the circumstances, and fair play support a contrary determination. I think we should reverse the decree of the trial judge and here enter a decree granting J. T. Crump the relief applied for.

STAPLES, J., concurs in this dissent.