GOOD, Respondent, v. FARMERS MUTUAL HAIL INS. ASSN., of Iowa, Appellant.

(235 N. W. 114.)

(File No. 7000. Opinion filed February 19, 1931.)

108

*Hitchcock & Sickel,* of Mitchell, and *Hal W. Byers,* of Des Moines, Iowa, for Appellant.

*Mitchell, Zollman & Navin,* of Mitchell, for Respondent.

BURCH, J. Plaintiff sues to recover upon a hail insurance policy. Defendant is a mutual insurance company operating upon a strictly mutual basis; the premiums consist solely of assessments to be levied at the close of the hail season between the 20th of September and the 15th of October of each year, after all losses for the year have been ascertained and adjusted, when an assessment is made to meet the losses and expenses of the current year. Plaintiff took out a five-year policy dated June 24, 1927. At the end of the year 1927 he was assessed $91.42 and notified of the assessment under date of October 1, 1927. This assessment was never paid. In 1928 plaintiff suffered a total crop loss by hail and now seeks to recover upon his policy for that loss. The insurance company denies liability because of his failure to pay the 1927 assessment. In the application signed by plaintiff appears this statement, "I agree to pay all just assessments and be governed by the articles of incorporation and by-laws of the association." The application forms a part of the policy, and on the back of the policy are the by-laws governing. Section 10 of the by-laws covers the levying and collection of assessments, and is as follows:

"The Board of Directors shall levy and collect such assessments as may be necessary to pay losses and expenses and create and maintain such emergency fund for the payment of excess losses as to them may seem necessary to best protect the policies of the members of this Association, and when the assessment is made, the Secretary shall immediately notify by mail each member of his share of the assessment, giving a list of losses adjusted at the time of preparing the notice and the names of parties sustaining the same and the member shall upon receipt of said notice, remit within thirty days to the Secretary at Des Moines, Iowa, the amount of his assessment; and should he fail to do so, the Secretary shall give him a second notice, adding a penalty of 25 cents. And if a member fails to pay the assessment and penalty within sixty days of the date of the first notice, the Secretary shall, by registered letter, demand of such delinquent member the assessment and penalty, together with an additional penalty of 10 per cent, and it may be by civil suit collected by the Secretary on behalf of the Association, including both penalties and assessment and policies of the members of this Association on which the assessment and penalties remain delinquent or unpaid sixty days from the date of the first notice shall be cancelled five days from the date of the registered letter provided for above and such members shall not be entitled to recover in case of loss during such delinquency. Upon the payment of the delinquent amount the policy shall be reinstated from the date of such payment unless otherwise ordered by the assured. If it becomes necessary to collect by suit the member against whom such suit is commenced shall be liable for costs and Attorney's fees. All assessments and penalties are payable at the office of the Association in Des Moines, Iowa."

In an attempt to comply with this by-law, three notices were sent out by the secretary of the company. The material portion of the first notice is as follows:

"The board of directors met at the home office with all members present except J. A. Benson, and after carefully examining all the proofs of loss filed by the adjusters, they were approved and an assessment was levied in Zone One of 3.5%, in Zone Two of 4.9%, in Zone Three of 6.53 plus %, in Zone Four of 8.7%, and in Zone Five of 11.6%. No business was written in Zone Six.

"It is going to take every cent which can be raised from this assessment to pay the losses and expenses and your officers are depending upon your loyalty and willing promptness in performing your part.

"Your share of this assessment on Policy No. A-1056 is $91.42. You may send this by Bank Draft, Post Office Money Order, or Express Money Order. If it is an accommodation to you, we will accept your personal check."

The material portions of the second notice are as follows:

"On October 1st we mailed you a notice of the amount of your assessment and while the response to that notice has been prompt and cheerful, yet we have so far failed to receive the amount due from you. * * * Your share of the 1927 assessment together with the 25c penalty required by the contract on policy No. A-1056, is $91.67, which you may remit by bank draft, Post Office Money Order, or if more convenient, by personal check."

The third notice was as follows:

"Third Notice.

"Dear Sir: As required of your Secretary by the terms of the By-laws made by the members at the Annual Meeting I am sending to those of you who have not yet paid your assessment this notice and I particularly call your attention to the reading of Section 10 of the By-laws, as follows, viz. (This section is set out in full in this notice as it appears earlier in this opinion and need not be repeated here.)

"Your share of this assessment together with the penalties provided on policy No. A-1056 is $100.83. This includes a penalty 10% but I feel that you will forgive me for taking upon myself to say to you that if you will mail me your check dated any time before the 25th of December, I will accept it without this 10% penalty.

"I am sure this will please you and you cannot afford to miss this opportunity to save yourself some money and to keep good the name of your Association. And your policy which has been cancelled as provided will be reinstated upon the payment of the amount due—unless it has expired or cancelled as per contract.

"Send bank draft, Post Office money order, or if it will be an accommodation to you your personal check will be accepted.

"Every assessment must be collected by me and I hope to do this without collecting a single penalty."

Plaintiff recovered judgment for the full amount of the policy, and defendant appeals from the judgment and from an order denying a new trial.

Under the terms of the policy, the failure to pay the 1927 assessment suspended the policy. But respondent contends that section 9191, R. C. 1919, applies to this policy, that the company did not take the necessary steps to suspend the policy, and for that reason the policy is not now and never has been suspended or canceled. Appellant contends that the statute (section 9191) does not apply, but that, if it be held that it does apply, the notices are a full compliance with the statute, so far as it is possible under the insurance plan of this company to comply therewith.

■■■■ This court, in Schultz v. Des Moines Mut. Hail & Cyclone Ins. Ass'n, 35 S. D. 627, 153 N. W. 884, Ann. Cas. 1917D, 78, held that the statute is applicable to mutual hail insurance companies. That case we think is sound, but the application in that case contained an obligation in the form of a promissory note, and it is mentioned that "there was an obligation given which was expressly denominated by the insurer and insured as a note." In the instant case there is no note taken for the premium and there is no obligation taken for the premium unless the words in the application, "I agree to pay all just assessments and be governed by the articles of incorporation and by-laws of the association," are an obligation within the meaning of section 9191 providing:

"No policy of insurance shall, by virtue of any condition or provision thereof, be forfeited, suspended or impaired for nonpayment of any note or obligation taken for the premium or any part thereof, unless the insurer shall, not less than thirty days prior to the maturity of such premium note or obligation, mail, postage prepaid, to the assured at his usual postoffice, a notice stating:

"1. The date when such note or obligation will become due.

"2. The amount of principal and interest that will then be due.

"3. The effect upon the policy of nonpayment.

"Such notice shall further inform the assured of his right, at his own election, either to pay in full and keep the policy in full force or to terminate the insurance by surrendering the policy and

paying such part of the whole premium as it shall have earned, and must further state the amount which assured is lawfully required to pay, or which, on account of previous payment, may be due him in case of his election to terminate the insurance on the day of the maturity of the premium note or obligation."

The meaning of the word "obligation" depends upon the sense in which it is used. It is susceptible of many meanings. But the sense in which it is used in the statute (section 9191)· as an instrument taken for the payment of money at some future time, an obligation was at common law a bond or an instrument under seal. Extending its meaning in that sense to a modern application, it must at least be in writing, and it would seem that it should create or fix some liability that would not otherwise exist. If the agreement involved is to be held to be an obligation taken for a premium, it should in some manner secure the premium or furnish evidence of a defined and existing premium to be paid at some definite date. That this is the sense in which the word is used in the statute appears in the requirement that notices be given 30 days prior to the maturity of the obligation. To fix the maturity of the above-quoted agreement construed as an obligation would be very difficult. No premium is due until assessed, and not then unless it is just, and, when assessed, if just, it is immediately due. Such an agreement is too indefinite and uncertain to constitute an obligation taken for a premium. From the context of the application we are satisfied it cannot be construed as such an obligation, for the language as employed is part of a bilateral contract used in expressing the reciprocal relations between the contracting parties. Section 9191, R. C. 1919, has no application to this policy, and, if a valid assessment was made and notice thereof given, plaintiff's failure to pay it operated to suspend his policy, and he cannot recover. Respondent contends that there was no valid notice of assessment given to him for the year 1927. He says nonpayment alone is no defense, and that the company must prove that all necessary steps were taken to effect a suspension or cancellation of the policy.

 On the mutual plan whereby losses are to be paid by prorating them to all policyholders, it is only fair that all should pay. Failure to pay by any policyholder impairs the value of every policy or increases the burden on those who do pay. Manifestly it is unfair for respondent to collect his loss when he has refused

to pay his share of the losses of others with whom he has associated himself for mutual protection. But the pro rata share for each policyholder to pay must be ascertained by the company's board of directors. It is not within the power of the policyholder to ascertain or know the amount he should pay until he has some information of the amount of adjusted losses and the expense of the association. Section 10 of the by-laws provides for the levy of an assessment by the board sufficient to pay losses and expenses and to "create and maintain an emergency fund for the payment of excess losses as to them may seem necessary to best protect the policies." Respondent insists that the burden of proving a valid assessment is upon appellant. In this we think he is right. Kinney v. Brotherhood of American Yeomen, 15 N. D. 21, 106 N. W. 44; Hauge v. Farmers' Mutual Hail Ins. Ass'n, 205 Iowa, 1099, 212 N. W. 473. But in the state of the record where no issue of the validity of the assessment is made, and respondent in effect concedes a valid assessment and seeks to defeat the effect of non-payment on other grounds (in this case by a counterclaim in his first cause of action and by failure of the company to give the notice required by section 9191, R. C. 1919), we think the recitals in the notice in evidence as a record of the fact and of the steps taken to assess is sufficient to sustain that burden. It may be presumed the company could and would have made formal proof if respondent had not tacitly admitted a valid assessment.

 A more difficult question is the sufficiency of the notice of the assessment conceding the assessment to have been regular and valid. The by-laws require the secretary to "immediately notify by mail each member of his share of the assessment; giving a list of the losses adjusted at the time of preparing the notice and the names of parties sustaining the same." The evidence received shows the notice served, but it does not show a "list of the losses adjusted" nor the names of the parties sustaining them. There is no proof that such a list was served with the notice, and the fair inference is that no such list was served. This list would furnish some information bearing on the fairness of the assessment, though without further facts, as the amount of insurance in force, the expenses incurred, and the amount deemed by the board to be necessary to protect the policies, it would not be sufficient to enable insured to compute for himself the fair amount that should

be assessed. However, the parties contracted that such information as the list would furnish should be given, and we cannot say it is immaterial. It does not appear to have been waived in any manner, and we must therefore hold that the notice of assessment was insufficient to bind insured and effect a suspension of the policy in the event of his failure to pay the assessment as provided by the by-laws.

But there is another provision of the by-laws (section 13) that gives to the company the right to cancel the policy, without cause, by "giving five days' notice in writing thereof to the assured." The third notice contained these words, "And your policy which has been cancelled as provided will be reinstated upon the payment of the amount due—unless it has expired or cancelled as per contract." This was notice of cancellation, for an erroneous reason perhaps, but nevertheless within the rights of the company. To bind the insured to pay the assessment, the company may have to comply strictly with the contract, and, before non-payment can work a forfeiture, there must be an assessment which insured is bound to pay. But that in no way affects the right to cancel at will before a loss has been sustained. Where the will to cancel appears and necessary steps to effect a cancellation on that ground have been taken, the policy is canceled, though without such steps it would have remained in force.

By the third notice a cancellation of the policy was effected. This was long prior to the loss for which recovery is now sought. Though the failure to pay the first assessment did not work a forfeiture because the company failed to take the necessary steps to charge respondent, it did nevertheless supply the provocation that moved the company to cancel the policy, which it had the right to do, with or without provocation.

The judgment and order appealed from are reversed.

POLLEY, P. J., and CAMBPELL, and WARREN, JJ., concur.

ROBERTS, J., disqualified.