James T. JOHNSON, Sr., Administrator of the Estate of James T. Johnson, Jr., deceased, et al., Appellants,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.

No. 8019.

United States Court of Appeals Fourth Circuit.

Argued Jan. 19, 1960.

Decided March 21, 1960.

Paul Whitehead and J. Frank Shepherd, Lynchburg, Va., for appellants.

William W. Sweeney, Lynchburg, Va. (Caskie, Frost, Davidson & Watts, Lynchburg, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Nationwide Insurance Company instituted this declaratory judgment pro-

ceeding under 28 U.S.C.A. §§ 2201, 2202, in the United States District Court for the Western District of Virginia. Nationwide asked that the court determine whether or not there was coverage under a liability insurance policy issued by it to one Charles Wills at the time of the accident in which the insured vehicle was involved, resulting in death to three persons, including the insured, Charles Wills, who were occupants of the car, the four other occupants being seriously injured. Nationwide claimed that it had effectively canceled the policy before the accident. The appellants, who were the defendants below, included the four injured parties, the personal representatives of the persons killed and the father and mother of the insured.

Nationwide moved for summary judgment on the pleadings, depositions, exhibits and the record as a whole, which motion was granted. The court denied a similar motion made by the parties defendant. This appeal followed. The facts hereinafter stated appear to find ample support in the depositions, exhibits and record before the District Court.

Prior to February 20, 1958, Frank Wills, the father of Charles Wills, owned a 1950 Ford automobile which was insured by Nationwide. For all practical purposes, this automobile belonged to Charles Wills; he used it to travel to and from his work, and for his own personal pleasure in the evenings and on week ends; he paid most of the maintenance and upkeep and sometimes paid the insurance premiums.

The premium on the liability policy covering the Frank Wills 1950 Ford was due on July 12, 1957, but was not paid on the due date or within a seventeen-day grace period allowed by Nationwide and, by the terms of the cancellation notice, this policy expired. On August 10, 1957, Charles Wills went to Nationwide's agent, W. S. McConnell, and caused a new policy to be issued on the 1950 Ford in the name of Frank Wills, which policy was dated August 10, 1957, effective for six months or until February 10, 1958. Charles Wills paid the premium in advance and he was listed as the principal driver of the insured vehicle. The policy was delivered to Charles but apparently he did not tell his father of the cancellation of the old policy or that a new policy had been issued with different effective dates.

On or about February 20, 1958, Charles Wills, who was then of legal age, purchased his own automobile, a 1951 Ford, and on February 22, 1958, went to agent McConnell to procure liability insurance coverage on the car. McConnell, thinking that the premium due on February 10, 1958, on the 1950 Ford had not been paid, began writing the policy application on a form intended for use in applying for a new policy rather than on a form intended for use when insurance was to be transferred from one vehicle to another. If the application is for a new policy, such policy will be effective from the date of issue but, in case of a transfer of insurance, the transferred policy is for the period stated in the policy.

McConnell wrote the application as effective February 22, 1958, for a term of six months but before he completed the application, Charles Wills informed him that he, Charles, had paid, within the grace period of seventeen days, the premium due on February 10, 1958, on the 1950 Ford at Nationwide's office in Lynchburg, Virginia. Realizing his mistake but having been informed that Charles was in haste, McConnell told Charles that the application would be voided, a transfer application would be prepared in order to transfer the insurance from the 1950 Ford to the 1951 Ford, and if there were any errors, the company would correct them. McConnell then prepared an application for transfer but neglected to change the policy period from February 22, 1958–August 22, 1958, to February 10, 1958–August 10, 1958. Under Nationwide's operating method, each policy holder becomes a company member but such membership can be transferred among members of the same family and, upon such transfer,

payment of the prescribed membership fee is waived. Since this was a transfer, Charles was not charged the new membership fee of $6.00. The 1950 Ford, the vehicle insured under the earlier policy in the name of Frank Wills, has not been used or insured since February 1958.

When Nationwide discovered McConnell's error, it mailed to Charles Wills a check for $2.20 and it was stated on an attached rider that this amount represented an overpayment of premium on his policy. At or about the same time, Nationwide mailed to McConnell a form of endorsement which allegedly changed the effective date of the policy back to February 10, 1958, the endorsement intended for delivery to Charles Wills. Charles received and cashed the check for the returned portion of the premium but McConnell, through oversight or neglect, failed to deliver the endorsement to him. However, Nationwide's records were changed to show the period of coverage effective for a period of six months from February 10, 1958.

Pursuant to a provision in the insurance contract requiring it to mail to its policy holder a notice of premium due before expiration of the policy,[1] Nationwide, on July 20, 1958, mailed a notice to Charles Wills notifying him that his premium was due on August 10, 1958. Not having received payment, on August 15, 1958, Nationwide sent to Charles Wills, by registered mail, a past due premium notice which provided: "Because we haven't received your premium payment, due on the date shown above, we must cancel the policy numbered below. THE CANCELLATION WILL BECOME EFFECTIVE AT 12:01 A.M. ON THE 17TH DAY AFTER THE ABOVE DATE. If we receive the payment before that time, however, the cancellation will be withdrawn." The notice specified the amount due, the policy number, the make of car insured and the name of the insured. At the top of the notice there was a block space over which appeared the words, "DATE DUE", and in this space the date August 10, 1958, had been written. The "ABOVE DATE" referred to in the quoted language of the notice obviously referred to the "DATE DUE" shown as August 10, 1958. Both notices were found in the effects of Charles Wills after his death.

On August 30, 1958, Charles Wills was operating the insured vehicle when it collided with a stationary object, the accident resulting in the aforementioned deaths and injuries. Appellants contend that the policy of insurance held by Charles Wills was effective for a period of six months beginning February 22, 1958, and ending August 22, 1958, and that the grace period, within which the company would accept payment of premium and before cancellation, was seventeen days after August 22, 1958. Following the accident, within the seventeen-day period subsequent to August 22, 1958, and thereafter, the father of Charles Wills made repeated efforts to pay the premium on this policy but Nationwide refused to accept payment. The court held that the policy had been effectively canceled by Nationwide as of August 27, 1958, that being the seventeenth day after August 10, 1958.

The record contained depositions of agents of Nationwide who stated that the premium on this policy had not been paid. In pre-trial discovery depositions taken by Nationwide, various members of Charles Wills' family testified that Charles told them that he had paid the renewal premium on his automobile policy on or about August 22, 1958. Appellants contended that testimony concerning the alleged statements of Charles was admissible under the Virginia "Dead Man's Statute", Code of Virginia Title

---

1. "Mutual Policy Conditions
"*    *    *    *    *    *
"4. PREMIUM NOTICE.
"Prior to the expiration of the term for which a premium has been paid and ac- cepted by the Company, a notice of the premium required to renew or maintain this policy in effect will be mailed to the Named Insured, at the address stated in this policy. * * *"

8, § 8–286 (1950).[2] The District Court held that these declarations were hearsay, that they were not rendered admissible under the statute and further held, as a matter of law, that Charles Wills had not renewed his policy of insurance by timely payment of the renewal premium. We perceive no error in these rulings of the court.

The object of the "Dead Man's Statute" is stated in Ratliff v. Jewell, 1929, 153 Va. 315, 149 S.E. 409, 411, 67 A.L.R. 1541, to be twofold:

"* * * that is, to provide, first, that there shall be no judgment in favor of an adverse or interested party founded on his uncorroborated testimony, and, second, in case an adverse party testifies, then to admit as evidence the memoranda and declarations of the opposite party, incapable of testifying. * * *"

The court then defined an adverse party as "a party to the record, against whom or in whose favor a judgment is sought"; and an interested party as one who "has a pecuniary interest in the recovery, although not a party to the record".

The District Court was of the opinion that, since the only witnesses who testified that Charles Wills had not made payment of his renewal premium were merely agents of Nationwide, the depositions of members of the Wills' family were not rendered admissible by this statute to refute the testimony of the agents. As is stated in Robertson's Ex'r v. Atlantic Coast Realty Co., 1921, 129 Va. 494, 106 S.E. 521, 524:

"* * * The parties to this litigation are the Atlantic Coast Realty Company, on the one side, and Robertson's executor, on the other. Burke, the agent of the plaintiff, is not a party to the action, is not an officer of the plaintiff, and has no manner of pecuniary interest in the results of the litigation. * * * He is simply the plaintiff's agent, competent at common law, and not rendered incompetent by the statute. It is true that he was the plaintiff's contracting agent in making the contract in litigation, and might well have been embraced in the class of witnesses requiring corroboration, but the language of the statute does not cover his situation, and the court cannot extend its provision beyond what the language justifies. If it had been intended to extend the requirement of corroboration to contracting agents, the statute should have said so, but it has not, and the court cannot read that provision into it.

\* \* \* \* \* \*

"* * * The 'entries, memoranda, and declarations' mentioned in the section are only admissible 'if such adverse party testifies', but as no such party has testified they are not admissible."

Appellants cite the recent cases of Hoge v. Anderson, 1958, 200 Va. 364, 106 S.E.2d 121, and Haynes v. Glenn, 1956, 197 Va. 746, 91 S.E.2d 433, to support their position. We find these cases inapposite since, in both, the testimony to be corroborated or contradicted was given by a record party to the proceedings.

Next, appellants contend that Nationwide waived any right to object to the admissibility of the hearsay testimony because it was contained in depositions taken at the instance of Nationwide which have been filed as a part of

2. "§ 8–286. Corroboration required and evidence receivable when one party incapable of testifying.—In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

the record. The lower court summarily dismissed this contention stating that while the depositions of members of the Wills' family were to be considered for purposes of summary judgment, they were not admitted into evidence for consideration by a jury should one be empaneled; and that under Rule 26(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the depositions would be admissible only for the purpose of contradicting or impeaching these deponents if they testified as witnesses at a trial. We agree with the District Court's conclusion and of particular interest and persuasiveness in this connection is Rule 32(c) (1) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides:

> "Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time."

Since the objection was to the admissibility of the evidence, the ground of the objection could not have been obviated or removed at the time of the taking of the depositions.

Appellants next charge that the court was in error in holding that the insurance policy issued to Charles Wills was effectively canceled as of August 27, 1958. Preliminarily the court held that there was no evidence that the endorsement whereby Nationwide sought to effect a change of the due date of the policy to August 10, 1958, was delivered to Charles Wills and that the original term of the policy remained as six months from the issue date of February 22,

1958. However, in effect, the court further held that the notice of premium past due, sent to Charles Wills on August 15, 1958, was, in fact, intended to provide a seventeen-day grace period from the date the premium was due, according to company records; that, since under the policy [3] either party had an absolute right to cancel, the notice mailed on August 15, 1958, must be treated as an effective notice of cancellation whereby Nationwide gave Charles Wills a grace period of seventeen days from August 10, 1958, the "ABOVE DATE", within which to pay the premium or have his policy canceled; that since the policy itself made no provision for grace period, those claiming the protection of the insurance must rely solely upon the cancellation notice for a right to *any* grace period; that, since the renewal premium was not paid, the policy was effectively canceled on August 27, 1958, pursuant to notice given, three days before the accident.

In reaching these conclusions, the District Court relied primarily upon two Virginia cases. The earlier of these cases, State Farm Mut. Auto. Ins. Co. v. Pederson, 1947, 185 Va. 941, 41 S.E. 2d 64, 66, dealt with an alleged cancellation under a cancellation provision similar to the one here involved. There the insured sought, by letter, to cancel his insurance policy "as of today", stating as a ground for his request that he was getting rid of his car and no longer needed insurance. He asked also for the return of the unearned premium. The insured vehicle having been subsequently involved in an accident, the insured undertook to repudiate his cancellation on the theory that the notice given by him to the insurance

---

3. "15. CANCELLATION

"This policy may be cancelled by the Insured named in Item I of the declarations by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured named in Item I of the declarations at the address shown in this policy written notice stating when not less then ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such Insured or by the Company shall be equivalent to mailing. * * *"

company failed to comply with the policy provisions in that he did not fix a date "thereafter" when the cancellation was to become effective. The court, in rejecting insured's argument, held that the letter was effective to cancel the policy on the date received by the insurance company, if not on the date mailed; that the purpose of such a provision was to prevent retroactive cancellation and such purpose was accomplished when the notice was treated as effective either from the date of mailing or the date of receipt of the letter. The court rejected also insured's contention that he intended the return of the unearned premium to be a condition precedent to cancellation and held that such intent was not disclosed in the letter because the request for premium return was treated in a paragraph separate from that in which cancellation was requested. See Annot. 8 A.L.R.2d 203 (1949). As a prelude to its ultimate conclusion, the court in the Pederson case adopted the rule expressed in 45 C.J.S. Insurance § 458, p. 117 (1946), that in order for an insured to terminate the contract his notice or request must be unconditional and absolute and must conform to the requirements of the policy; further, that before a particular communication can be construed as a notice of cancellation, it must be ascertained from the communication itself or all the circumstances that the party seeking to cancel had the *intent* to cancel.

The later of the two Virginia cases upon which the District Court relied is Ampy v. Metropolitan Cas. Ins. Co., 1958, 200 Va. 396, 105 S.E.2d 839, in which it was held that the contract provision must be construed strictly according to its terms unless latent ambiguity makes such construction impossible.

We are of opinion that both of these Virginia cases are authority for the proposition that when the insurance contract gives either party an absolute right of cancellation, such provision will be strictly construed and any notice conveying the intention to cancel will be effective. As is held in State Farm Mut. Auto. Ins. Co. v. Miller, 1953, 194 Va. 589, 74 S.E.2d 145, intention is a purpose which a party forms in his own mind and which can be conveyed to others by words, acts or sometimes by the circumstances of the occasion. In our opinion, there could be no better showing of intent than that expressed in the writing itself which definitely and unambiguously states that on a certain date the policy will be canceled if the premium is not paid.

As additional support for its conclusion, the District Court cited a number of cases from other jurisdictions in which the courts have said that where an insurer is required to give no reason for the cancellation of a policy, the fact that he gives a reason, even though the reason is untrue, does not affect the validity of the cancellation.[4]

Appellants cite, in support of their position, the case of Peterson v. Allstate Ins. Co., 1958, 164 Cal.App.2d 517, 330 P.2d 843,[5] in which the court viewed

4. Guthrie v. Great American Ins. Co., 4 Cir., 1945, 151 F.2d 738; Wing Chung Long Co. v. Prussian Nat. Ins. Co., 1917, 33 Cal.App. 715, 166 P. 358; Gibbons v. Kelly, 1951, 156 Ohio St. 163, 101 N.E. 2d 497; Pearson v. General Cas. & Sur. Co., 1931, 107 N.J.Law 509, 154 A. 739; Good v. Farmers' Mut. Hail Ins. Ass'n, 1931, 58 S.D. 106, 235 N.W. 114.

5. In Peterson v. Allstate Ins. Co., insured was issued an automobile liability insurance policy for a term ending April 5, 1954. It was provided that the premiums should be paid in installments, $33.25 on delivery of the certificate, $24.00 three months after such delivery, and $24.00

six months after such delivery. On April 12, 1954, insured paid $16.58. On May 3, 1954, the insurance company mailed a notice of cancellation for non-payment of premium which stated that $23.25 was past due on the first installment and cancellation was declared effective May 15, 1954. This was in error since only $16.67 was past due. The notice of cancellation was in accord with the cancellation provision in the policy. The accident in question occurred on May 20, 1954. The court said:

" * * * As a matter of fact, her payment of $16.58 covered her through May 12, 1954, and hence had not the 10-day

with favor the rule said to be expressed in Richmond Ins. Co. v. Zettwoch, 216 Ky. 463, 287 S.W. 964, and Fisher v. Globe & Rutgers' Fire Ins. Co., 147 La. 984, 86 So. 417, and held that a cancellation by mistake is no cancellation at all.

The two cases cited by the California court in Peterson v. Allstate Ins. Co., supra, are not persuasive as in neither of these cases can be found any similarity to the instant case. In Richmond Ins. Co. v. Zettwoch, it was clear that there was never any intention to cancel, and in Fisher v. Globe & Rutgers' Fire Ins. Co., no intention to cancel was conveyed to the insured until he received the refund of premium, the time at which the court held the cancellation to be effective.

■ While Nationwide was mistaken in its belief that Charles Wills' policy would expire on August 10, 1958, rather than on August 22, 1958, since the endorsement to effect the change of dates had not been delivered to insured, the collected premium, less the portion later refunded to Charles Wills, was based on its rates for coverage for a period of only six months from February 10, 1958. The notice sent by Nationwide to Charles Wills and received by him clearly expressed Nationwide's intention to cancel on a specific date if the premium had not then been paid. In view of the two Virginia cases hereinbefore cited, namely, State Farm Mut. Auto. Ins. Co. v. Pederson, and Ampy v. Metropolitan Cas. Ins. Co., we must affirm the District Court's determination, giving full effect to the cancellation provision of the policy and the notice of intention to cancel.

■ Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". That Rule 56(c) applies to declaratory judgment actions is shown by 6 Moore, Federal Practice, ¶ 56.17(19) at 2209 (2d ed. 1953). See also Farm Bureau Mut. Auto. Ins. Co. v. Hammer, 4 Cir., 1949, 177 F.2d 793; New Century Cas. Co. v. Chase, D.C.S.D.W.Va.1941, 39 F.Supp. 768. The only issues before the District Court were legal in nature, involving the admissibility of the deposition testimony and the effect of the notice of cancellation mailed on August 15, 1958. Clearly there was no genuine issue as to any material fact.

Affirmed.

notice been sent prematurely through mistake, she would have been covered on the day of the accident, May 20. Research has revealed no California case directly in point; however, we are impressed with the rule expressed in Richmond Ins. Co. v. Zettwoch, 216 Ky. 463, 287 S.W. 964, and Fisher v. Globe & Rutgers' Fire Ins. Co., 147 La. 984, 86 So. 417, that a cancellation by mistake is no cancellation at all."